James Andrew MILUM *v.* Marcia Eileen MILUM

CA 94-414                                              894 S.W.2d 611

Court of Appeals of Arkansas
En Banc
Opinion delivered March 15, 1995

*Keith I. Billingsley*, for appellant.

*Suzanne Penn*, Central Arkansas Legal Services, for appellee.

JOHN E. JENNINGS, Chief Judge. This is a child custody case. The parties, James and Marcia Milum, have two children, Tad born in September 1990, and Tiffany born in June 1992. In August 1993, Mr. Milum filed suit for divorce. In December 1993, the Pulaski County Chancery Court entered a decree of divorce in which it found that it was in the best interest of the children that Mrs. Milum be awarded primary custody of the children, subject to Mr. Milum's visitation rights.

On appeal, Mr. Milum contends that the court's finding that the best interests of the children require the award of custody to the mother was clearly contrary to a preponderance of the evidence. He also contends that the trial judge applied the so called "tender years doctrine." We affirm the chancellor's decision.

The applicable general rules and our standard of review are not in dispute. In *Fitzpatrick* v. *Fitzpatrick*, 29 Ark. App. 38, 776 S.W.2d 836 (1989), we said:

> [In custody cases], the primary consideration is the best interest and welfare of the child and all other considerations are secondary. Custody awards are not made or changed to gratify the desires of either parent, or to reward or punish either one of them. In determining matters of child custody, a chancellor has broad discretion, which will not be disturbed unless manifestly abused.
>
> . . .
>
> It is well-settled that although this Court reviews

chancery cases *de novo* on the record, the chancellor's findings will not be disturbed unless clearly against the preponderance of the evidence. Since the question of the preponderance of the evidence turns largely upon the credibility of the witnesses, we defer to the superior position of the chancellor. This deference to the chancellor is even greater in cases involving child custody. In those cases a heavier burden is placed on the chancellor to utilize to the fullest extent all of his powers of perception in evaluating the witnesses, their testimony, and the child's best interest. We have often stated that we know of no cases in which the superior position, ability, and opportunity of the chancellor to observe the parties carry as great a weight as those involving child custody.

*Fitzpatrick*, 29 Ark. App. at 39-40 (citations omitted).

In August 1993, the court entered an order providing for joint custody on a temporary basis. Mr. Milum then filed a "motion for emergency abatement of custody." Another temporary hearing was held on October 29, 1993. At that hearing Kelly Jones, Mrs. Milum's thirty-one year old sister, testified that she had expressed concern to Mr. Milum. She had told him that Marcia Milum was not capable of taking care of the children because she was spending the money Kelly Jones gave her on candy and Cokes for the children instead of milk. She also told Mr. Milum that Marcia was living with a known "crack" user.

Mrs. Jones testified that the information about Mrs. Milum living with a man was given to her by a third sister, Ticie Paulson, and that Ticie was not "a responsible person." Mrs. Jones testified that after she made the earlier statement she went to Mrs. Milum's apartment. She said the house was immaculate, the children were clean, and that there was adequate food. There was no sign of a man living in the apartment. She testified that she had "no problem" with the children remaining with Mrs. Milum.

Mrs. Milum testified that she was not having a relationship with any man. She said she was not employed and had not been since August, but that she was now receiving food stamps. She testified that she was attempting to find employment.

Mr. Milum testified that he worked for the North Little Rock Wastewater Company and made $18,000.00 per year. He was living in his mother's home and testified that he had the ability to provide an adequate home for the children. He testified that he was concerned about the fact that Ticie Paulson lived so close to Mrs. Milum and the children. He said that Ticie had a bunch of "drug friends." He testified that Mrs. Milum had two brothers who were then in prison.

Mrs. Milum's neighbor, Russell Glover, testified that when he and his wife had visited in Mrs. Milum's apartment the place and the children were clean and there was food in the icebox. On this evidence, the chancellor changed temporary custody to the father. The chancellor said:

> So I don't mean for one minute that I believe Mrs. Milum has the children in a dangerous situation, but she can't support them. And I'm going to order her to pay $30.00 a week child support beginning November 15th because I want her to get a job and I can guarantee you she is not to get custody of these children if she doesn't get a job.
>
> . . .
>
> I want to emphasize to you that this does not mean that that's what I am going to do on a final basis.

At the final hearing on December 2, 1993, Mrs. Milum testified that she had found a job with Service Masters in North Little Rock and was making $5.00 per hour on an as needed basis, cleaning houses that had been damaged by fire. Twenty hours a week was the most she had worked since her employment.

She testified that this was the first time she had ever really worked, and that during the marriage Mr. Milum did not want her to work. She testified that during the marriage she and her husband lived in his parents' home and that she stayed home and took care of the children. She testified that she was the one who changed the children's diapers. She testified that she had paid child support, as ordered, since the date of the last temporary hearing.

Mr. Milum testified that it was Marcia Milum's decision not to work and that she took care of the children while he worked.

He testified that he wanted custody of the children and that while he had had them during the last month, they were bathed every night. He and his mother shared the job of bathing the children.

He testified that "until recently," he thought that Mrs. Milum did a good job of taking care of the children. He testified that he was very close to his mother and that "right now" she was serving as "sort of a surrogate mother" to the children. He testified that he was now helping to change the youngest child's diapers. He also testified that he was capable of taking care of the children without his mother's help.

Mr. Milum's mother, Barbara, testified that it was she who had asked Marcia Milum not to work.

From the bench, the chancellor announced that she would grant the divorce to Mr. Milum and award primary custody of the children to Mrs. Milum. She then attempted to explain her thinking to the parties. During the course of her remarks, the chancellor realized she had not asked the attorney ad litem for her recommendation. The attorney ad litem stated:

> Basically, my recommendation, after speaking with different people and finding absolutely nothing wrong with the parenting skills or the love with either parent, after investigating the unfounded allegations of domestic abuse which I could not corroborate, and keeping with the best interest of the children mainly through environment, I recommended that they stay with Jim and with Barbara Milum.

On this evidence, and after giving due deference to the superior position of the chancellor, we cannot say that her decision is clearly against a preponderance of the evidence. Appellant appears to argue that since temporary custody had been placed with him for the one month preceding the final hearing, the burden was on Mrs. Milum to show a "change of circumstances" justifying a modification of the earlier temporary order. No authority is cited for this proposition and we can find none.

Appellant also notes that the chancellor specifically stated in her remarks from the bench that "the home environment, physical surroundings, are better with Mr. Milum." Certainly, this is a factor to be given appropriate weight by the chancellor. But it is clear that the primary basis for the chancellor's award

of custody was that Mrs. Milum had been the primary caretaker for the two children for most of their lives, and this fact is not in dispute. We cannot say that the chancellor was wrong in giving this factor more weight than the relative material circumstances of the parties.

Appellant also contends that the trial court applied the so called "tender years doctrine." *See generally, Riddle* v. *Riddle*, 28 Ark. App. 344, 775 S.W.2d 513 (1989). Arkansas Code Annotated § 9-13-101 (Repl. 1993) provides that custody awards shall be made solely in accordance with the best interests of the children and without regard to the sex of either parent. Appellant points to the chancellor's remark from the bench that he had not been the primary caregiver "to two very small children who need the bonding with parents, not grandparents, and I don't have any question that you have not been a good caregiver. You have just not been the caregiver." We find nothing in the chancellor's statement to indicate that she based her decision on gender.

Affirmed.

COOPER, ROBBINS, and MAYFIELD, JJ., dissent.

JAMES R. COOPER, Judge, dissenting. This is a relatively clear-cut case. Although the chancellor specifically noted that the father was a capable parent with stable employment, she awarded custody to the mother. In this context it should be noted that the mother had been on public assistance and had never worked until she temporarily lost custody of the children at the temporary hearing. After being prodded to obtain employment by the chancellor, she found her current part-time position with a janitorial service from which she earns approximately $100.00 a week. The father was clearly better able to provide economic security for the children with all that entails regarding their prospects in life. Both parties were found to be capable parents and caregivers. Nevertheless, the chancellor awarded custody to the mother on the strength of a finding that she had been the primary caregiver.

By way of explanation, the chancellor stated that these were "two very small children who need the bonding with parents, not grandparents." I submit that this phrase rings hollow when it is

considered that the real choice is between the children being raised by their father and grandmother, or by their mother and a day-care service. In either case, there will be bonding with a parent, and the presence of a concerned and involved grandparent should be seen as a factor favoring an award of custody to the father.

It may be argued that the mother should not be penalized for her limited economic potential because this was one of the sacrifices she made in order to care for her children. There is merit to this argument. Nevertheless, there is likewise merit to the argument that the father should not be penalized for not being the primary caregiver, because that is one of the sacrifices he made by devoting himself to securing the economic well-being of the family. But both arguments are beside the point, because the paramount concern in this case is the best interest of the children. To my mind, the overwhelming weight of the evidence points to the father as the custodian best able to provide for the children's best interests both in the short run and in the long run. In light of this disparity, and the chancellor's comments concerning the age of the children and their need to "bond" with a "parent" (as if the father were something other than a parent), I can only conclude that the chancellor reached this result by applying the tender years doctrine *sub silentio.*

I dissent.

ROBBINS and MAYFIELD, JJ., join in this dissent.