Karen (Benson) TURNER *v.* Paul BENSON

CA 97-359                                    953 S.W.2d 596

Court of Appeals of Arkansas
Division III
Opinion delivered October 15, 1997

*Dodds, Kidd, Ryan & Moore*, by: *Judson C. Kidd*, for appellant.

*Atkinson Law Firm*, by: *Rita B. Atkinson* and *Richard W. Atkinson*, for appellee.

TERRY CRABTREE, Judge. The parties in this case were divorced in May of 1992 and custody of their two minor children, Christal and Ben, was awarded to appellant, Karen Turner. Since their divorce, both appellant and appellee have remarried, and Christal has reached majority. In November of 1995, appellee sought custody of Ben, who was 13 years old at the time. After a hearing on August 1, 1996, the chancellor awarded custody to appellee. Appellant contends that the order changing custody was clearly against the preponderance of the evidence. We disagree and affirm.

In deciding whether a change of custody is warranted, a chancellor must first determine whether there has been a material change in the circumstances of the parties since the most recent custody decree. *Schwarz v. Moody*, 55 Ark. App. 6, 928 S.W.2d 800 (1996). If a material change has occurred, the chancellor determines custodial placement with the primary consideration being the best interest of the child. *Riley v. Riley*, 45 Ark. App. 165, 873 S.W.2d 564 (1994).

Although chancery cases are reviewed *de novo* on appeal, we will not disturb a chancellor's findings unless they are clearly erroneous or clearly against the preponderance of the evidence. *Stone v. Steed*, 54 Ark. App. 11, 923 S.W.2d 282 (1996). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. *Nichols v. Wray*, 325 Ark. 326, 925 S.W.2d 785 (1996). Since the question turns largely upon the credibility and demeanor of witnesses, this court defers to the superior position of

the chancellor to make such determinations. *Schwarz, supra.* The deference to be accorded to the chancellor is even greater in cases involving child custody.

> In those cases a heavier burden is placed on the chancellor to utilize to the fullest extent all of his powers of perception in evaluating the witnesses, their testimony, and the child's best interest. We have often stated that we know of no cases in which the superior position, ability, and opportunity of the chancellor to observe the parties carry as great a weight as those involving child custody. (Citations omitted.)

*Milum v. Milum,* 49 Ark. App. 3, 5, 894 S.W.2d 611, 612 (1995); *see Fitzpatrick v. Fitzpatrick,* 29 Ark. App. 38, 776 S.W.2d 836 (1989).

In his petition, appellee alleged that appellant had begun using her husband's surname (Turner) as Ben's surname, that she had consistently interfered with appellee's visitation schedule, and that she had made derogatory statements about appellee in Ben's presence. Appellee pointed to the chancellor's prior admonishments that Christal and Ben needed healthy relationships with both parents and argued that the above actions harmed his relationship with Ben.

Several witnesses testified on behalf of both parties at the hearing. Appellee and others testified to the good relationship he had with Ben and the animosity that Christal had developed toward him. Dr. DeYoub, a court-appointed psychologist, evaluated the parties and the children, and his reports were admitted into evidence. Of critical importance were his remarks regarding the relationship between appellee and Christal:

> She did not make a single statement about Mr. Benson. I found the interview with her to be quite chilling. She rejects her father without the slightest display of emotion.
>
> . . .
>
> What happened to Christal is a serious matter, because that relationship is gone with her dad and time and maturity will only determine if she will ever change. The threat that Ben will do the same is a real one.

Dr. DeYoub indicated that a change of custody was a viable option, and that the court could do so immediately or wait to determine whether matters were otherwise resolved. Dr. DeYoub's report stated that if the problems persisted, appellee should gain custody of Ben. He also opined that if custody were changed immediately, Ben's relationship with appellant would remain strong, and his relationship with appellee would strengthen.

Dr. Tanner, a counselor hired by appellant, testified that Ben had a strained relationship with and feared appellee. Dr. Tanner recommended that custody remain unchanged.

Although appellant raises only one point on appeal, five points of argument are made thereunder. Two of these arguments are challenges to the chancellor's consideration of the evidence. First, appellant contends that the change of custody was not warranted in light of appellee's testimony that he and Ben enjoyed a good relationship. Second, appellant argues that Dr. DeYoub, the attorney ad litem, and Dr. Tanner unanimously recommended that Ben stay with appellant. This particular statement is not completely accurate. As stated, Dr. DeYoub's opinion was that a change of custody was an option. The ad litem did not testify at trial, but did submit a letter in support of appellant's motion to reconsider. However, no hearing was held on the motion. Only Dr. Tanner, who, as the chancellor recognized, was hired by appellant, recommended that custody not be disturbed.

The chancellor was in a superior position to judge the credibility and demeanor of the many witnesses at the hearing, and in doing so she utilized to the fullest extent all of her powers of perception in evaluating the witnesses, their testimony, and the child's best interest, *Milum, supra,* and we cannot say that her findings were erroneous.

Appellant also contends that Dr. DeYoub's report clearly reflected a desire on Ben's part to live with appellant, and that the chancellor erred in not considering this preference. While the preference of the child is a factor to be considered when making a custody determination, *Anderson v. Anderson,* 18 Ark. App. 284, 715 S.W.2d 218 (1986), the chancellor has the

discretion to decline to give weight to the child's preference, and it is not binding upon the court. *Malone v. Malone*, 4 Ark. App. 366, 631 S.W.2d 318 (1982). We cannot say that the chancellor abused that discretion in the present case.

Appellant's fourth contention is that the chancellor erred in changing custody when the evidence showed that the good relationship between Ben and appellee had not been adversely affected. The chancellor stated that her concerns stemmed from appellee's poor relationship with Christal and the fear that Ben's relationship with appellee would suffer the same fate if custody were not changed.

■ ■ Appellant was admonished three years prior to the custody hearing that she was alienating Ben from appellee. An award of custody to one parent does not lessen the noncustodial parent's responsibility to the child, nor does it affect his right as a parent to provide guidance and to participate in decisions affecting the welfare of the children. *Clark v. Reiss*, 38 Ark. App. 150, 831 S.W.2d 622 (1992); *see Provin v. Provin*, 264 Ark. 551, 572 S.W.2d 853 (1978). Whether one parent is alienating a child from the other is an important factor to be considered in change-of-custody cases, for, just as the chancellor noted below, a caring relationship with both parents is essential to a healthy upbringing. The testimony of several witnesses left the chancellor with the clear impression that Ben was happy during visitation with appellee, but was uncomfortable in expressing his enjoyment when he returned to appellant. Former spouses are often hostile to one another, and it is unfortunate when their children are forced to bear the brunt of this bitterness. This type of alienation, knowing or otherwise, can hardly be said to be in the best interest of the child. *Riley, supra.*

■ Lastly, appellant argues that since there was evidence of a good relationship between Ben and appellee, the chancellor must have changed custody solely to punish appellant. Appellant points only to statements made by the court regarding the inappropriateness of allowing Ben to choose which name he should use at such a young age. It is important to note that while the chancellor did have a strong opinion as to the way appellant dealt

with the situation, her statements, as abstracted by the parties, were well intentioned and warranted. No evidence of punishment was presented.

The chancellor made a difficult decision based on extensive and varied testimony. Because she was in a better position to determine the credibility of witnesses and the best interests of the child, and because her findings are supported by the evidence, we affirm.

ROBBINS, C.J., and MEADS, J., agree.