Rhonda FORD *v.* Jon D. FORD

01-554 65 S.W.3d 432

Supreme Court of Arkansas
Opinion delivered January 31, 2002

*Sharp & Sharp, P.A.*, by: *J. Baxter Sharp III*, for appellant.

*Richard L. Proctor*, for appellee.

ANNABELLE CLINTON IMBER, Justice. In December 1998, Appellee Jon Ford filed for divorce from Appellant Rhonda Ford. In an order filed on February 5, 1999, the chancellor placed the children temporarily in the custody of Rhonda and, at Jon's request, ordered drug testing of both parties. On March 1, 1999, the chancellor changed custody of the children to Jon "until further orders of the Court" because Rhonda had tested positive for the use of drugs. The divorce decree entered on May 15, 2000, awarded custody of the two children to Jon, established child support and visitation for Rhonda, but reserved all issues of property division until the court received additional information. In a document entitled "Supplemental Decree" and filed on October 27, 2000, the chancellor addressed the issues of property division.

On November 27, 2000, Rhonda filed a notice of appeal "from a Divorce Decree entered in this Court on March 3, 2000 and from a Supplemental Decree entered in this Court on September 12, 2000." She raises three points on appeal: 1) the court erred in awarding custody to the father rather than granting joint custody; 2) the court erred in setting visitation; and 3) the court erred in setting the amount of the child support and in establishing the date to which it was made retroactive. This case also raises the issue of whether the appeal was timely, thereby granting jurisdiction to this court under our Rule of Appellate Procedure—Civil 2(d) (2001). The Arkansas Court of Appeals certified the case to this court as an issue of first impression, a significant issue needing clarification or development of the law, and a substantial question of law concerning the interpretation of a rule of this court. Thus, our jurisdiction is pursuant to Ark. R. Sup. Ct. 1-2(b)(1, 5, and 6) (2001). We hold that the appeal was timely filed and affirm the chancellor's rulings.

## I. Jurisdiction

[1-3] The first question is whether Rhonda's appeal is properly before this court. Neither party raised the issue of jurisdiction based on the timeliness of the appeal; however, "it is well settled that it is our duty to determine that this court has jurisdiction." *Haase v. Starnes*, 337 Ark. 193, 194-95 987 S.W.2d 704, 705 (1998). The question of jurisdiction centers around a possible conflict between Ark. R. App. P.—Civ. 2(d) (2001) and the requirement of a final

appealable order. Arkansas Rule of Appellate Procedure—Civil 2(a)(1) (2001) limits our appellate review to final orders to avoid piecemeal litigation. *Larscheid v. Arkansas Dept. of Human Services*, 343 Ark. 580, 36 S.W.3d 308 (2001). Rule 2 establishes a number of exceptions, including Rule 2(d) that provides: "All final orders awarding custody are final appealable orders." The potential conflict is with Rule 54(b), which provides that "[a]bsent the executed certificate required by paragraph (1) of this subdivision, any . . . order . . . which adjudicates fewer than all the claims . . . shall not terminate the action. . . ." Ark. R. Civ. P. 54(b) (2001). We have held that the exceptions identified in Rule 2 specify circumstances in which an issue is appealable even though the order of the chancellor was not final. *East Poinsett City Sch. Dist. #14 v. Massey*, 317 Ark. 219, 876 S.W.2d 573 (1994).

▪ The issue here is whether Rule 2(d) permitted Rhonda to appeal directly from the May 15, 2000 divorce decree, and, if so, was she required to appeal within thirty days or forfeit her right to appeal. The resolution of this issue requires us to decide whether the phrase "final orders awarding custody" as used in Rule 2(d) means a final order as to all issues as required by Rule 54(b), or merely any order that is final in terms of custody. We hold that Ark. R. App. P.—Civ. 2(d) permits an appeal from any order that is final as to the issue of custody, regardless of whether the order resolves all other issues. Therefore, Rhonda could have appealed directly from the May 15, 2000 divorce decree under Rule 2(d) because it was final as to the award of custody.

▪ Having determined that the divorce decree met the requirements of Rule 2(d), the issue then becomes whether Rhonda was required to file her appeal within thirty days of the divorce decree or lose her right to appeal. The resolution of this issue is found in Rule 2(b) that provides: "An appeal from any final order also brings up for review any intermediate order involving the merits and necessarily affecting the judgment." Ark. R. App. P.— Civ. 2(b) (2001). In the instant case, while the May 15, 2000 divorce decree was a final award of custody, it was only an intermediate order with reference to property division issues, which were not addressed by the chancellor until the supplemental decree was entered on October 27, 2000. As such, the issues resolved in the divorce decree, as an intermediate order, were brought up for review along with the appeal from the supplemental decree. In summary, while Rhonda could have appealed directly from the May 15, 2000 divorce decree under Rule 2(d), she was not barred from raising the issues resolved in the divorce decree in her appeal

from the October 27, 2000 supplemental decree. Therefore, Rhonda's notice of appeal, filed on November 27, 2000, was timely filed, and this court has jurisdiction.[1]

## II. Custody

We review chancery cases *de novo*, but will only reverse if the chancellor's findings were clearly erroneous or clearly against the preponderance of the evidence. *Skokos v. Skokos*, 344 Ark. 420, 40 S.W.3d 768 (2001). A finding is clearly erroneous when the reviewing court, on the entire evidence, is left with the definite and firm conviction that a mistake has been committed. *Id.* We give due deference to the chancellor's superior position to determine the credibility of the witnesses and the weight to be given their testimony. *Id.* In cases involving child custody, great deference is given to the findings of the chancellor. "This court has held that there is no other case in which the superior position, ability, and opportunity of the chancellor to observe the parties carries a greater weight than one involving the custody of minor children." *Taylor v. Taylor*, 345 Ark. 300, 304, 47 S.W.3d 222, 224 (2001). "The best interest of the child is the polestar in every child custody case; all other considerations are secondary." *Id. See also, Norwood v. Norwood*, 315 Ark. 255, 866 S.W.2d 398 (1993).

For her first point on appeal, Rhonda argues that the chancellor erred in awarding custody to Jon rather than joint custody because (1) the chancellor gave too much weight to her failed drug test while giving too little weight to her husband's former drug use; (2) the chancellor awarded custody without a home study for Rhonda; and (3) the chancellor did not factor in Jon's propensity for violence. After awarding temporary custody to Rhonda, the trial court ordered both parties to submit to drug tests. Jon's test results were negative, whereas Rhonda's test results were positive for amphetamines and methamphetamine. Rhonda first moved into her mother's home, and then into the home of her boyfriend. Jon's home study was favorable, and the Department of Human Services (DHS) attempted to conduct a home study for Rhonda. The DHS worker, Pat Nordan, testified that Rhonda asked that the home

---

[1] November 27, 2000 was a Monday. The deadline would have fallen on Sunday, November 26, 2000. Because the 27th was the next business day following the deadline, the appeal was timely filed. *Watanabe v. Webb*, 320 Ark. 375, 896 S.W.2d 597 (1995).

study not be conducted until she was in a more permanent environment. This testimony was disputed by Rhonda. Rhonda, Ms. Nordan, and Rhonda's mother all testified that Rhonda's living in her boyfriend's home was not in the children's best interest. The only independent witness to any violence between Jon and Rhonda observed Rhonda hitting Jon while he was holding one of their children.

Rhonda's final argument under this point is that the court should have given greater weight to her role as the primary caretaker of the children, relying on *Milum v. Milum*, 49 Ark. App. 3, 894 S.W.2d 611 (1995). In *Milum*, the chancellor awarded temporary custody to James Milum because Marcia Milum was not working and could not support the children. The chancellor also ordered Marcia to pay child support. *Id.* Marcia testified that she had never worked but had stayed home with the children at James's parents' house where they lived. She changed the children's diapers and was the primary caregiver at the mother-in-law's request. *Id.* Marcia, however, did get a job and paid child support as directed by the court. *Id.* The chancellor in awarding custody to Marcia found that her role as the primary care giver should be given greater weight than the superior financial condition of the father, and the Arkansas Court of Appeals affirmed. *Id. Milum* provides little support for Rhonda's argument. Unlike the instant case, there were no issues of drug use or inappropriate living conditions in *Milum*. Furthermore, unlike Marcia Milum, Rhonda Ford did not get a job and made no effort to pay child support.

The chancellor explained her reasons for awarding custody to Jon and emphasized Rhonda's decision to move into her boyfriend's home when she knew it was a situation that was not in the best interest of her children. Rhonda's failed drug test and her failure to pay child support were also factors influencing the chancellor's decision. Giving deference to the trial judge's superior position to evaluate the credibility of the witnesses and the evidence, we cannot say the chancellor was clearly erroneous or that her findings were clearly against the preponderance of the evidence. Thus, we affirm the chancellor's award of custody to Jon.

### III. Visitation

Rhonda next argues that because Jon works during the day and the children are placed in day care while she neither works nor pursues further education, the trial court erred by not allowing her

to care for the children when Jon is at work and the children are not in school. She also argues that the court erred in eliminating Wednesday evening visitation. The chancellor established standard visitation according to Schedule "A" of the Chancery Court Visitation Schedule and specifically prohibited overnight visitation at the home of Rhonda's boyfriend. The trial court also required a home study before overnight visits would be allowed at Rhonda's residence. Both parties were prohibited from having non-relatives of the opposite sex staying overnight while the children were present. The chancellor removed Wednesday night visitation because the oldest child was in school but permitted such visits when the children were not in school.

 Rhonda's argument is without merit. First, she did not pay child support because she chose not to get a job even though she had marketable skills. Remarkably, Rhonda now argues that because she does not work and does not support her children, she should be allowed to care for the children while Jon is at work. Furthermore, Rhonda does not explain how the trial court erred in granting standard visitation. As far as Wednesday visitation is concerned, the chancellor simply held that it was not appropriate while the oldest child was in school. We affirm the chancellor on the issue of visitation as well.

*IV. Child Support*

For her final point on appeal, Rhonda claims that the chancellor erred in both the computation of her income for child support and in making the child support retroactive. The trial court calculated her 1999 income as $7500 from farm rent, $3000 from grandparents, $3000 from a certificate of deposit, and $700 from retirement. Rhonda argues that the gift from her grandparents, the certificate of deposit, and the one-time retirement payment should not have been calculated as income because they would not be available as income in the future. She also argues that child support should not have been applied retroactively because in the March 1999 order the chancellor stated: "The Defendant will not be ordered to pay support at this time but will provide employment information to the Plaintiff's attorney when she is employed and child support will commence according to the chart." Rhonda suggests that she had no reason to know or expect that she would have to pay child support prior to the letter opinion dated March 8, 2000.

According to the letter opinion, the chancellor calculated Rhonda's income as $14,200 and used the child-support chart to determine that her child-support obligation should be $263 per month. In applying the child support retroactively to June 1999, the trial court explained: "It would have been reasonable for the Defendant to have become employed within four (4) months of entry of that order. By her admission there are no barriers to her employment and she has marketable skills. There is no reason then the child support should not be retroactive." In the supplemental decree, Rhonda was given credit toward her child-support obligation for one-half of the parties' AIM investment fund and one-half of the parties' tax refund. She was also given credit for one month's child support as a result of her marital interest in personal property awarded to Jon. After noting Rhonda's concern about the amount of child support and Jon's concern about the high cost of medical insurance, the court concluded that "[i]t is agreed that either party may ask for a modification of child support in the future."

The amount of child support lies within the sound discretion of the chancellor, and the chancellor's finding will not be reversed absent an abuse of discretion. *McWhorter v. McWhorter*, 346 Ark. 475, 58 S.W.3d 840 (2001); *Kelly v. Kelly*, 341 Ark. 596, 19 S.W.3d 1 (2000); *Smith v. Smith*, 337 Ark. 583, 990 S.W.2d 550 (1999). The chancellor is required to reference to the child-support chart, and the amount specified in the chart is presumed to be reasonable. *Smith v. Smith, supra.* However, the presumption that the chart is correct may be overcome if the chancellor provides written findings that the chart amount is unjust or inappropriate. *Id.*

### A. Calculation of Income.

For the calculation of child support, "income" is statutorily defined as:

(4)(A) "Income" means any periodic form of payment due to an individual, regardless of the source, including wages, salaries, commissions, bonuses, workers' compensation, disability, payments pursuant to a pension or retirement program, and interest.

(B) The definition of "income" may be expanded by the Arkansas Supreme Court from time to time in the Guidelines for Child Support Enforcement, § 9-99-901;

Ark. Code Ann. § 9-14-201(4) (Supp. 2001). In Administrative Order No. 10, we expanded the definition of "income" as follows:

"Income means *any form of payment, periodic or otherwise*, due to an individual, regardless of source, including wages, salaries, commissions, bonuses, worker's compensation, disability, payments pursuant to a pension or retirement program, and interest. . . ." *In re: Administrative Order Number 10: Arkansas Child Support Guidelines § II*, 331 Ark. 581 (1998) (emphasis added).[2] Factor 12 of the sources of income is also very broad: "Other income or assets available to support the child *from whatever source.*" *Id.*, § V(a)(12) (emphasis added). The definition is intentionally broad and designed to encompass the widest range of sources consistent with this State's policy to interpret "income" broadly for the benefit of the child. *McWhorter v. McWhorter, supra* (allowing the inclusion of gambling winnings and losses in the calculation of sources of income for child-support purposes).

We have, however, held that a salary bonus was not an appropriate source of income where the chancellor was unable to reduce the amount to a sum certain. *Kelly v. Kelly, supra.* As Rhonda points out, the Arkansas Court of Appeals has held that past farm income did not constitute a source of income once the farm was sold. *Mearns v. Mearns*, 58 Ark. App. 42, 946 S.W.2d 188 (1997). Likewise, in *Rowlett v. Burton*, 68 Ark. App. 228, 6 S.W.3d 336 (1999), the court of appeals reversed a chancellor's decision to include an inheritance as income for child-support purposes and order a lump-sum payment of 15% as child support. *Id.* The appellate court noted that it had previously held that inheritance was not income because the definition of income under federal tax laws excluded gifts and inheritances. *Id.* (citing *Halter v. Halter*, 60 Ark. App. 189, 959 S.W.2d 761 (1998)).

In 1997, this court expanded the definition of "income" for child-support purposes to include "any form of payment, periodic or otherwise . . . from whatever source." *Administrative Order Number 10, supra.* As noted above, the definition is intentionally broad to encompass the widest range of sources consistent with this State's policy to interpret "income" broadly for the benefit of the child. As such, the gift from Rhonda's grandparents, the certificate of deposit, and the retirement payment all fall within the broad range of Rhonda's sources of income for child-support purposes. A chancellor is not without discretion to deviate from the guidelines if

---

[2] This definition of "income" was adopted by *per curiam* order on October 1, 1997. *In re: Administrative Order Number 10: Arkansas Child Support Guidelines*, 329 Ark. 668 (1997). The current version of Administrative Order No. 10 retains this definition. *In re: Administrative Order Number 10: Arkansas Child Support Guidelines*, 331 Ark. 581 (1998).

the chancellor determines that non-periodic payments do not represent the noncustodial parent's ability to pay child support. In this case, however, the chancellor noted that there were no barriers to Rhonda's employment, that she had marketable skills, and that she had testified finances would not be a problem for her. Under such circumstances, the trial court correctly found that Rhonda's non-periodic sources of income could be included for determination of child support. Furthermore, the trial court did not require Rhonda to pay child support for a period of time so that she could find employment. In the supplemental decree, the chancellor invited the parties to request a modification of child support at any time.

Because we have purposely provided a very broad definition of income in Administrative Order No. 10, we affirm the chancellor's decision to calculate Rhonda's income by including all sources, periodic or otherwise. In so holding, we overrule all prior decisions by the Arkansas Court of Appeals to the extent that they are inconsistent with this opinion.

*B. Retroactive Award of Child Support.*

A parent has a legal obligation to support a minor child regardless of the existence of a support order. *Fonken v. Fonken,* 334 Ark. 637, 976 S.W.2d 952 (1998). This court has upheld a child's right to sue for past child support even though there was no support order. *Id.* We further affirmed the chancellor's award of retroactive child support. *Id.*

Rhonda asserts that she received no notice and that she neither knew nor could she expect child support to be awarded retroactively. This argument is without merit. As Rhonda admits in her brief, the trial court made it clear in the February 1999 hearing that the court expected her to find employment, at which point child support would be set according to the chart. Thus, Rhonda was put on notice that she would be expected to pay child support. When the trial court awarded child support in March 2000, it allowed Rhonda four months to find employment and only made the award retroactive to June 1999. As previously stated, Rhonda had a legal obligation to support her minor children. Although she had been informed by the trial court that she would be expected to pay child support once she was employed, Rhonda chose not to seek employment. We hold that the chancellor did not abuse her discretion by making the initial child-support award retroactive to June 1999.

Affirmed.