Cite as 2021 Ark. App. 365

# ARKANSAS COURT OF APPEALS
DIVISION IV
**No.** CV-19-862

| | | |
|---|---|---|
| DON TILTON, JR. | | **Opinion Delivered** September 29, 2021 |
| | APPELLANT | |
| | | APPEAL FROM THE CRAIGHEAD COUNTY CIRCUIT COURT, WESTERN DISTRICT [NO. 16JDR-16-96] |
| V. | | |
| LISA TILTON | | |
| | APPELLEE | HONORABLE RANDY F. PHILHOURS, JUDGE |
| | | REVERSED AND REMANDED |

## STEPHANIE POTTER BARRETT, Judge

Appellant Don Tilton, Jr., and appellee Lisa Tilton were divorced by a final divorce decree entered on July 18, 2019, by the Craighead County Circuit Court. Don appeals the temporary and final amounts of both alimony and child support.[1] This court remanded the case to supplement the record with the transcript of the 2017 temporary hearing as well as to correct deficiencies in the electronic record. *Tilton v. Tilton*, 2021 Ark. App. 100. These issues have now been corrected. For the reasons set forth below, we reverse and remand this case to the circuit court for further findings and determinations.

The parties married on October 10, 1998, and separated on June 7, 2015. Two children were born of the marriage, son TT, born on September 27, 2000; and daughter

---

[1]We note that that these support orders were made prior to the revision of Administrative Order No. 10, which became effective July 1, 2020. *In re Implementation of the Revised Admin. Order No. 10*, 2020 Ark. 131 (per curiam).

LT, born on October 2, 2004. Don filed for divorce on February 5, 2016, asking the circuit court to grant him an absolute divorce, to resolve property and debt issues, to award Lisa custody of the children, to award him visitation, and to order that he pay child support based on the child-support chart. Lisa counterclaimed for divorce, asking to be awarded sole custody of the children and to restrict Don's visitation due to his numerous admissions to institutions for drug addiction. She also requested temporary and permanent child support and alimony.

A temporary hearing was held on August 28, 2017, addressing the issues of alimony and child support. In the temporary order resulting from this hearing, the circuit court found that Don was "not forthcoming" in his testimony about his financial circumstances, and his documentation regarding his financial situation did not correlate to his testimony. The circuit court noted Don's expenditures and numerous vacations out of the country, stating it did not believe he went on those vacations without spending any of his own money. The circuit court further noted that Don's bank statements showed numerous deductions for trips in different countries and stated that "broke people just don't travel like that." The circuit court used Don's expenditures and lifestyle, as well as the fact that he had a new vehicle on which he made payments and paid insurance, to impute income to him. At the hearing, the circuit court noted Don's 2016 tax return showed an adjusted gross income of $104,310, divided that figure by twelve, and found Don's monthly adjusted gross income to be $8,692.50. It then ordered that 20 percent of that amount, or $1,738.50, be paid monthly to Lisa as temporary alimony, retroactive to April 27, 2016 (the date Lisa filed her counterclaim requesting alimony), for a total of $28,134.80 in retroactive alimony. The

2

circuit court set temporary child support at $1,825.42 a month, also making it retroactive to April 27, 2016, for a balance of $29,206.72 in back child support. Both arrearages were ordered to be paid within thirty days.

Don amended his complaint on August 17, 2018, alleging he was entitled to a divorce on the ground of eighteen months' separation without cohabitation. He noted that TT would no longer be a minor by the time of a hearing and requested that the parties share custody of LT, thus negating the need for child support to be paid.

A final hearing was held on June 17, 2019, and a final decree of divorce was entered on July 18, 2019. Sole custody of LT was awarded to Lisa. The circuit court divided the personal marital property between the parties. The circuit court noted that since the temporary order was entered, Don had paid Lisa no alimony, had paid nothing toward his child-support arrearage, and had only paid a total of $8,420 in child support. As of May 3, 2019, alimony and child-support arrearages totaled $128,697, with interest accruing at 10 percent per annum. The circuit court held Don in contempt for his failure to comply with the temporary order and sentenced him to sixty days in jail, allowing Don to purge the contempt by paying all outstanding sums due to Lisa. The circuit court specifically found Don's testimony to be "unequivocally untruthful" and Don's girlfriend's testimony to be "evasive at best."

The circuit court determined permanent alimony was necessary based on Don's clear ability to pay, his luxurious lifestyle, his comments to his children that he received $6,000 a week from his mother and made over $300,000 a year, and Lisa's clear need for alimony. Furthermore, the court noted that Don admitted on cross-examination he had received

3

$97,000 in December 2018, his mother continued to put money into his girlfriend's account for his benefit, and there was no dispute as to Don's access to these funds. The circuit court adopted the computations found in the temporary order for alimony and child support when it determined permanent alimony and child support. Don filed a timely notice of appeal on August 18, 2019, appealing both the temporary order and the final divorce decree.

I. *Standards of Review*

Our standard of review for an appeal from a child-support order is de novo on the record, but we will not reverse a finding of fact by the circuit court unless it is clearly erroneous. *Steeland v. Steeland*, 2018 Ark. App. 551, 562 S.W.3d 269. A finding is clearly erroneous when the reviewing court, on the entire evidence, is left with a definite and firm conviction that a mistake has been made. *Id*. In a child-support determination, the amount of child support lies within the sound discretion of the circuit court, and its findings will not be reversed absent an abuse of discretion. *Id*. Arkansas Supreme Court Administrative Order No. 10 (2019) defines "income" for purposes of child support intentionally broadly, and this definition is intended to encompass the widest range of sources to effectuate the state's policy to adequately support children. *Id*. It is the ultimate task of the circuit court to determine the expendable income of a child-support payor. *Perser v. Perser*, 2019 Ark. App. 467, 588 S.W.3d 395. This income may differ from income for tax purposes. *Id*. In reviewing the circuit court's findings, we give due deference to its superior position to determine the credibility of the witnesses and the weight to be accorded their testimony. *Id*.

Section I of Administrative Order No. 10 provides that it is a rebuttable presumption that the amount of child support calculated in accordance with the most recent version of the Family Support Chart is the proper amount to be awarded; however, the circuit court may grant less or more depending on the needs in each case. It further provides that all orders granting child support "shall contain the court's determination of the payor's income, recite the amount of support required under the guidelines, and recite whether the court deviated from the Family Support Chart," and "[i]f the order deviates from the guidelines, it shall include a justification of why the order varies as may be permitted under Section V hereafter." Ark. Sup. Ct. Admin. Order No. 10(I).

An award of alimony is within the circuit court's sound discretion, and this court will not reverse the decision to award alimony absent an abuse of that discretion. *Middleton v. Middleton*, 2020 Ark. App. 389, at 11, 609 S.W.3d 652, 660. A circuit court abuses its discretion when it exercises its discretion improvidently, thoughtlessly, or without due consideration. *Townsend v. Townsend*, 2021 Ark. App. 87. The circuit court is in the best position to determine the needs of the parties concerning an award of alimony. *Id.* In reviewing an alimony award, our role is simply to determine whether the circuit court abused its discretion, not to substitute our judgment for that of the circuit court. *Medlen v. Medlen*, 2020 Ark. App. 159, at 8–9.

Generally, the purpose of alimony is to rectify economic imbalances in earning power and standard of living in light of the particular facts of each case. *Middleton*, 2020 Ark. App. 389, at 11, 609 S.W.3d at 660. The primary factors to be considered in determining whether to award alimony are the financial need of one spouse and the other spouse's ability

to pay. *Id.* Secondary factors include the financial circumstances of both parties; the couple's past standard of living; the value of jointly owned property; the amount and nature of the parties' income, both current and anticipated; the extent and nature of the resources and assets of each of the parties; the amount of income of each that is spendable; the earning ability and capacity of each party; the property awarded or given to one of the parties, either by the court or the other party; the disposition made of the homestead or jointly owned property; the condition of health and medical needs of both husband and wife; the duration of the marriage; and the amount of child support. *Id.*

## II. *Temporary Child Support and Alimony*

Don argues that the circuit court clearly erred in using his adjusted gross income instead of his taxable income to calculate temporary child support. Income for purposes of child support may differ from income for tax purposes, *Perser, supra.* Section (II)(a) of Administrative Order No. 10 defines income as "any form of payment, periodic or otherwise, due to an individual, regardless of source, including wages, salaries, commissions, bonuses, workers' compensation, disability, payments pursuant to a pension or retirement program, and interest" less proper deductions for federal and state income tax; withholding for Social Security, Medicare, and railroad retirement; medical insurance paid for dependent children; and presently paid support for other dependents by court order. This definition is intentionally broad to encompass the widest range of sources for the benefit of the child.

According to his tax return, Don has additional income other than his wages. And some of the deductions claimed on his 2016 tax return are not allowable deductions under the definition of income, e.g., charitable gifts and mortgage interest. He is incorrect that

6

the circuit court was limited to merely his taxable income. However, the number the circuit court used—his adjusted gross income—did not take into account any deductions for the state and federal taxes Don owed, withholding for Social Security or Medicare, or medical insurance paid for dependent children, as required by the definition of income, and the circuit court abused its discretion in using Don's 2016 adjusted gross income to set his child support. This is not to say that the circuit court may not impute income or find that Don's income is higher than stated on his tax return if the evidence supports such findings; due deference is given to the circuit court because it is in a superior position to determine the credibility of the witnesses and the weight to be given their testimony. *Steeland*, *supra*. However, Don must also be given the appropriate deductions under the definition of income, which was not done when the circuit court relied solely on Don's adjusted gross income to determine Don's monthly income for purposes of setting his child-support obligation. We reverse and remand on the issue of temporary child support.

Don also argues that the circuit court abused its discretion in determining the amount of temporary alimony to be paid to Lisa. He contends that the circuit court erred in using the adjusted gross income from his 2016 tax return instead of his taxable income, arguing that the circuit court should have used 20 percent of his taxable income of $39,132 (monthly income of $3,261.00) instead of using 20 percent of his 2016 adjusted gross income of $104,310 (monthly income of $8,692.50). Don is incorrect that the circuit court was required to use only his taxable income to arrive at the appropriate amount for temporary alimony. According to his tax return, Don has additional income other than his wages. And the circuit court was provided canceled checks from Don's account showing his numerous

7

expenditures for his trips with his girlfriend, and he also spent $5,200 on an engagement ring for her. The circuit court determines witness credibility, and it clearly did not believe that Don's only source of income was his wages, as evidenced by its comment that broke people do not travel like he does. However, the circuit court simply took Don's 2016 adjusted gross income, divided it by twelve to arrive at a monthly adjusted gross income, and awarded Lisa 20 percent of that amount as temporary alimony. The circuit court failed to take into account deductions for the state and federal taxes Don owed or his monthly expenses, and there was no analysis of the factors to be considered in awarding alimony— just a mathematical calculation. We hold this was an abuse of discretion, and we reverse and remand on the issue of temporary alimony.

III. *Award of Alimony and Child Support in Final Divorce Decree*

Don argues that the circuit court erred in setting child support at the final hearing at $1,825.42 because it adopted the computations used in setting the 2017 temporary order child-support obligation, there was only one minor child when the final divorce decree was entered instead of two, and the circuit court failed to refer to the family-support chart in determining child support. We agree, and we reverse and remand on the issue of child support.

In setting child support in the final decree, the circuit court "adopt[ed] Judge Alexander's rational computations [from the temporary hearing] as portion of its rational[e] in awarding" child support. But the final divorce hearing was held in the summer of 2019, and the 2017 order setting temporary child support was based on information taken from Don's 2016 tax return. The circuit court made no findings with regard to Don's income

when the final divorce decree was entered in 2019, nor did it make any reference to the family-support chart to determine the amount of child support Don should pay, as required by Arkansas Code Annotated section 9-12-312(a)(3)(A) (Repl. 2020). Using financial information that was over two years old to set child support was an abuse of discretion on the part of the circuit court. Furthermore, while TT and LT were both still minors when the 2017 temporary order was entered, only LT was a minor at the time of the final divorce hearing. The circuit court's wholesale "adoption" of the amount of child support to be paid was thus based on two children, not one, and that was also an abuse of discretion. This is not to say that the circuit court is not free to impute income or raise or lower the rebuttable child-support obligation found in the family-support chart after it determines Don's income and assesses the credibility of the witnesses, but it must provide some written bases for its determinations.

Don argues that the circuit court erred in adopting the same calculations that were used in the 2017 temporary order to set Lisa's alimony in the final decree. We agree. By using financial information from the 2017 temporary hearing that was over two years old at the final hearing, the circuit court failed to determine Don's 2019 financial position, and it made no analysis regarding the factors to consider in setting alimony. Two more tax returns had been filed by the time of the final hearing. The circuit court heard testimony that Don was employed by his girlfriend's company, that his daughter overheard Don make statements that he made $300,000 a year and that his mother gave him $6,000 a week, that his mother deposited over $25,000 in his girlfriend's account for Don and the kids, and that Don and his girlfriend had taken numerous trips together. There were many factors to consider

9

regarding Don's financial situation, and the circuit court analyzed none of them, even though it is the finder of fact and assesses witness credibility in this situation. The permanent-alimony determination is therefore reversed and remanded for the circuit court to properly analyze the factors used when determining if, and how much, alimony should be awarded.

Reversed and remanded.

HARRISON, C.J., and KLAPPENBACH, J., agree.

*Lyons & Cone, P.L.C.*, by: *Jim Lyons* and *David D. Tyler*, for appellant.

*Robert S. Tschiemer*, for appellee.