Cite as 2023 Ark. App. 521

# ARKANSAS COURT OF APPEALS

DIVISION IV
**No.** CV-22-241

|  |  |  |
|---|---|---|
| | | **Opinion Delivered** November 15, 2023 |
| AMY SMITH | | |
| | APPELLANT | APPEAL FROM THE HOT SPRING COUNTY CIRCUIT COURT [NO. 30DR-20-251] |
| V. | | |
| | | HONORABLE STEPHEN L. SHIRRON, JUDGE |
| BRAD SMITH | | |
| | APPELLEE | |
| | | AFFIRMED IN PART; REVERSED AND REMANDED IN PART |

## BRANDON J. HARRISON, Chief Judge

Amy Smith appeals the decree that finalized her divorce from Brad Smith and argues that the circuit court erred in refusing to grant a continuance, refusing to award any child support, setting the amount of alimony, distributing the marital property, and awarding attorney's fees. We affirm the denial of the continuance but reverse and remand on the remaining issues.

The parties married in May 2011 and have two children. On 2 November 2020, Brad filed for divorce; the next day, he amended his complaint and requested primary custody of the children and child support. Amy counterclaimed and requested primary custody of the children, child support, and alimony. In the divorce decree entered in October 2021, the circuit court awarded the parties joint custody of the children and temporary alimony to Amy. Neither party was ordered to pay child support. Amy timely

appealed the circuit court's order.[1]  Additional facts related to the arguments on appeal will be discussed below.

## I.  *Continuance*

We review a circuit court's denial of a motion for continuance using an abuse-of-discretion standard.  *Goodson v. Bennett*, 2018 Ark. App. 444, 562 S.W.3d 847.  An appellant must not only demonstrate that the circuit court abused its discretion by denying the motion but also must show prejudice that amounts to a denial of justice.  *Sims v. Moser*, 373 Ark. 491, 284 S.W.3d 505 (2008).  For the circuit court to have abused its discretion, it must have acted improvidently, thoughtlessly, or without due consideration.  *Null v. Ark. Parole Bd.*, 2019 Ark. 50, 567 S.W.3d 482.

The circuit court originally set a trial date of 17 May 2021, but the children's attorney ad litem moved for a continuance on April 29, explaining that she had very recently been appointed and needed time to prepare for trial.[2]  The court granted the continuance and set a new trial date of September 22.

On 21 May 2021, Amy's counsel moved to withdraw due to counsel's obligations as a deputy prosecutor.  The motion was granted, and Meredith Wineland was substituted as Amy's counsel.  However, just days before the September trial date, Wineland moved the court to release her as Amy's attorney, explaining that her client was "hostile and angry"

---

[1]The circuit court's order did not dispose of Amy's counterclaim, but her notice of appeal dismissed any pending but unresolved claims pursuant to Ark. R. App. P.–Civ. 3(e). Also, Brad filed notice of a cross-appeal but has chosen not to pursue it.

[2]The order appointing the ad litem was not entered until 28 September 2021.

and that there was "absolutely no working relationship between the Defendant and this attorney." According to the motion, Amy had verbally released Wineland as her attorney on September 19 and asked Wineland to request a continuance so new counsel could be hired. The motion stated that Amy "will be prejudiced if this attorney is permitted to withdraw, and a continuance is not granted."

Brad objected to a continuance and asserted that this was Amy's attempt to delay the matter from final disposition. The children's ad litem also objected to a continuance and stated that further delay was not in the children's best interest.

At the commencement of trial on September 22, Amy confirmed to the court that she did not want Wineland to continue as her counsel. The court agreed to dismiss Wineland but warned that it would not grant a continuance and that Amy would have to represent herself. The court could see "no reason that this matter is not ready to go forward, other than whatever appears to me to be an intention by you to try to control the circumstances and the way that this case proceeds through my court." Amy stated that she could not represent herself, and after a brief recess, she and Wineland agreed to proceed with Wineland as counsel.[3]

On appeal, Amy asserts that in considering a request for continuance, the circuit court must look to the circumstances surrounding the request and must balance the court's

---

[3]On 1 March 2022, the circuit court entered an order releasing Wineland as Amy's attorney of record "at the request of Defendant on September 19, 2021." The order also stated that Amy's request for a continuance was not granted. This order belies Brad's argument advanced on appeal that Amy failed to obtain a ruling from the circuit court on her request for a continuance to obtain new counsel.

calendar against the needs of fairness and a party's right to their choice of counsel. *Arroyo v. State*, 2013 Ark. 244, 428 S.W.3d 464.[4] In this case, there is no evidence that the circuit court made any effort to balance these competing concerns and instead presented Amy with an impossible choice—continue with an attorney who considered the attorney-client relationship broken or represent herself. Because the motion to withdraw was filed only three days prior to trial, Amy had not had a reasonable opportunity to secure other counsel. She concludes that it was arbitrary and unreasonable to deny her request for continuance without inquiring into the attendant circumstances. Amy also argues that prejudice was demonstrated because the record shows that counsel was unprepared, lacked documentary evidence, and failed to articulate reasonable arguments about the equitable distribution of property, child support, and alimony.

We hold that Amy has failed to show that the circuit court abused its discretion in denying the continuance. Amy relies on the right-to-counsel standard in criminal cases, but the law is clear that there is no Sixth Amendment right to counsel in ordinary civil cases. *Levey v. Levey*, 2014 Ark. App. 198 (citing *Light v. Duvall*, 2011 Ark. App. 535, 385 S.W.3d 399). In addition, Amy argues what is effectively an ineffective-assistance-of-counsel claim to demonstrate prejudice, but she failed to raise that argument below. *See Light, supra* (declining to address appellants' argument that their trial counsel did not properly raise objections and failed to research the law because the argument was not raised below).

---

[4]Amy acknowledges that *Arroyo* is a criminal case that considers the Sixth Amendment right to counsel of one's choice as a constitutional guarantee; however, she contends that cases involving custody of children and division of property deserve similar consideration.

## II. *Child Support*

Our standard of review for an appeal from a child-support order is de novo on the record, and we will not reverse a finding of fact by the circuit court unless it is clearly erroneous. *Hall v. Hall*, 2013 Ark. 330, 429 S.W.3d 219. In reviewing a circuit court's findings, we give due deference to that court's superior position to determine the credibility of the witnesses and the weight to be accorded to their testimony. *Id.* When the amount of child support is at issue, we will not reverse the circuit court absent an abuse of discretion. *Id.* However, a circuit court's conclusion of law is given no deference on appeal. *Id.*

Administrative Order No. 10 provides the framework for calculating child support under the Income Shares Model.[5] Section (I) of Administrative Order No. 10 provides that each parent's share is that parent's prorated share of the two parents' combined income. Section (I) further provides that the pro rata charted amount establishes the base level of child support the payor parent must pay the payee parent. It is the ultimate task of the circuit court to determine the expendable income of a child-support payor. *Tilton v. Tilton*, 2021 Ark. App. 365. "Income" is "intentionally broad and designed to encompass the widest range of sources consistent with the State's policy to interpret 'income' broadly for the benefit of the child." Ark. Sup. Ct. Admin. Order No. 10(III)(2), (citations omitted).

In its written order, the circuit court made the following findings:

> 6. The Plaintiff, Brad Smith, inherited and was gifted certain lands and personal property. The inheritance was transferred by was [sic] of a trust

---

[5]Administrative Order No. 10 was revised on 6 October 2022. However, the version of Administrative Order No. 10 applicable in this case is the version set forth in *In re Implementation of Revised Administrative Order No. 10*, 2020 Ark. 131 (per curiam), which we will refer to herein simply as "Administrative Order No. 10."

and a limited liability company owned by the trust. The Court finds that the real property, the 2002 Bucc mobile home, approximately 140 acres and 52 acres, and any other buildings located on 218 Saginaw Eddy Road, Donaldson, Hot Spring County, Arkansas, to be owned by either the Brad Smith Family Trust dated May 30, 2012 or Brad Smith Farms, LLC.

Further, the Court finds the testimony of the Plaintiff, Brad Smith, to be credible concerning the personal items owned by the Brad Smith Family Trust dated May 30, 2012 and/or Brad Smith Farms, LLC., together with the written documentation which was submitted into evidence. The Court finds that any personal property owned by the Brad Smith Trust and/or Brad Smith Farms, LLC., are not marital property.

. . . .

The Court saw no comingling of assets and the records of transfers appear clean and managed as it was intended. There was no evidence submitted to refute that the Plaintiff, Brad Smith, inherited these assets and as such are independently owned by a separate entity and the Court does not have jurisdiction over these assets.

. . . .

21.     The court has determined that the Plaintiff earns a gross income of $8,500.00 per month and Wife earns a gross income of $5,833.00 per month.  Therefore, the parents' combined gross income is $14,333.00 with a basic child-support obligation of $1,873.00 for their two (2) children per the Revised Arkansas Family Support Chart.  The court also finds that Husband is paying for the children's health insurance premium in the amount of $61.00 per month for a total of $61.00 for additional child-rearing expenses. Husband is responsible for 59% of the total obligation ($1,110.76 share of basic obligation plus $36.18 for expenses) and has a total child-support obligation of $1,172.76 per month.  Wife is responsible for 41% of the total obligation ($762.24 share of basic obligation plus $122.09 for expenses). The Court finds that based upon the true joint custody arrangement, the parties sharing equal time with the children, the parties providing support for the children when they are in their separate care, the parties dividing equally expenses such as extra-curricular activities, medical, vision and dental care that is not covered by insurance, that neither party shall pay the other child support.

22.     The parties shall equally divide all agreed upon extracurricular expenses, school expenses and the like for the benefit of the minor children. The Plaintiff, Brad Smith, shall continue to maintain health insurance for the

6

benefit of the minor child so long as it is available at a reasonable cost. Currently, Husband pays approximately $300.00 per month for coverage for the minor children. Each party shall pay one-half of all medical, dental, orthodontic, ophthalmic, prescription medications, and mental health expenses which are not covered and reimbursed by insurance.

Amy asserts that even if the Brad Smith Family Trust (the Trust) and Brad Smith Farms, LLC (the LLC), are nonmarital property, Brad's assets and income from the Trust and the LLC should have been credited as a source of income because he controls the Trust. The evidence showed that Brad received a substantial inheritance from his grandfather that funded the Trust and that the Trust has approximately $650,000 in liquid assets. Brad is the sole trustee, and as such, he maintains the right to remove property from the Trust at any time and to control the distribution of income and principal from the Trust.

The evidence also showed that the Trust owns the LLC, which is a cattle farm, and that the LLC owns the 192-acre family farm and Brad's home on the farm.[6] The Trust has also funded, through the LLC, the purchase of a $4000 Polaris Sportsman 450, an $8100 Ford F-350 truck, and a $34,500 tractor. In addition, the Trust "gifted" the marriage $10,000 as a down payment for a Ford F-150 truck. Amy contends that Brad has clearly used the Trust as a supplemental source of income; therefore, the Trust should be considered as income for purposes of child support. Amy argues that the child-support award should

---

[6]Brad's mother gifted the 140-acre family farm to the Trust, and the Trust later purchased an additional 52 acres. Both parcels were eventually deeded to the LLC.

be reversed with instructions to apply the chart-based amount of child support and also to consider the Trust as a source of gross income for child-support purposes.[7]

We agree that the circuit court erred in not considering the assets and income from the Trust and the LLC as a source of income in calculating child support. In *Rowlett v. Bunton*, 68 Ark. App. 228, 6 S.W.3d 372 (1999), this court reversed the circuit court's decision to include an inheritance as income for child support purposes, but the decision was overruled by the supreme court in *Ford v. Ford*, 347 Ark. 485, 65 S.W.3d 432 (2002), because the supreme court had "purposely provided a very broad definition of income in Administrative Order No. 10." 347 Ark. at 496, 65 S.W.3d at 440.

In addition, Administrative Order No. 10(III)(2) defines gross income to include "earnings generated from a business," "distributed profits or payments from . . . [a] trust fund" and "assets available to generate income for child support." Section (III)(2) also specifically contemplates including an inheritance as income: "One-time sources of money like an inheritance, gambling or lottery winnings, or liquidating a Certificate of Deposit, for example, is income for these Guidelines purposes."

In sum, we hold that that the circuit court erred in not considering the income generated by the Trust and the LLC because, although these entities were inherited by Brad

---

[7]Brad argues that Amy failed to raise this issue below. We disagree. Both parties requested child support in their claims for divorce, and at the close of the trial, Amy's counsel advised the circuit court that it needed to perform the required calculations under Administrative Order No. 10 and the application of the child-support chart. Amy clearly raised the issue below that she was entitled to child support. Moreover, in a civil bench trial, even where a party does not challenge the sufficiency of the evidence at trial, she does not waive the right to do so on appeal. *Case v. Van Pelt*, 2019 Ark. App. 382, 587 S.W.3d 567.

and are nonmarital property, that income should be attributed to Brad under Administrative Order No. 10's directive to interpret income broadly to encompass the widest range of sources. We therefore reverse and remand for the circuit court to reconsider the issue of child support consistent with the guidelines in Administrative Order No. 10, and we specifically note that Administrative Order No. 10 contemplates child support in joint-custody situations.

In light of this ruling, we also reverse and remand for reconsideration of the issues of alimony, property distribution, and attorney's fees. The purpose of alimony is to rectify the economic imbalance in earning power and standard of living of the parties to a divorce in light of the particular facts of each case, and we have held that among the factors to consider in awarding alimony is the amount of child support awarded. *Jones v. Jones*, 2014 Ark. App. 614, 447 S.W.3d 599. Moreover, we have held that property division and alimony are complementary devices that a circuit court uses to make the dissolution of marriage as equitable as possible. *Cole v. Cole*, 82 Ark. App. 47, 110 S.W.3d 310 (2003). We remind the circuit court on remand that it has broad discretion and flexibility to redistribute marital and nonmarital property to achieve an equitable distribution, *Moore v. Moore*, 2016 Ark. 105, 486 S.W.3d 766, and in this case, there appears to be a significant disparity between the assets at each party's disposal. Finally, it is also well settled that the circuit court has the inherent power to award attorney's fees in domestic-relations proceedings and that this is a matter within the circuit court's discretion. *Hargis v. Hargis*, 2019 Ark. 321, 587 S.W.3d 208. Because all these issues are inextricably intertwined, our reversal and remand of the

child-support issue requires a remand for the circuit court to consider the remaining issues as well in arriving at an equitable result.

Affirmed in part; reversed and remanded in part.

GRUBER and HIXSON, JJ., agree.

*Cullen & Co., PLLC*, by: *Tim Cullen*, for appellant.

*Taylor & Taylor Law Firm, P.A.*, by: *Tory H. Lewis*, *Andrew M. Taylor*, and *Tasha C. Taylor*, for appellee.