Vicki McKINNEY *v.* Randall K. McKINNEY

CA 05-381                                              226 S.W.3d 37

Court of Appeals of Arkansas
Opinion delivered February 1, 2006
[Rehearing denied March 8, 2006.*]

---

\* GRIFFEN and BAKER, JJ., would grant rehearing.

*Taylor Law Firm*, by: *Scott Smith*, for appellant.

*Sexton Law Firm*, by: *Jane Watson Sexton*, for appellee.

JOHN B. ROBBINS, Judge. This is an appeal regarding a reduction in child support. Appellant Vicki McKinney and appellee Randall McKinney are the parents of a son who was ten years old when they divorced on October 3, 2003. Per their agreement, which was approved by the Washington County Circuit Court, Vicki retained custody, while Randall was granted visitation and was obligated to pay $1000 per month in child support, one-half of his son's extracurricular expenses incurred through high school, one-half of any medical expenses for the child not covered by insurance, and one-half of his college expenses. Randall had been unemployed since September 2003, but he had been approved to receive $1000 in monthly unemployment benefits until he retained gainful employment, but for no longer than six months. The agreed order read in pertinent part that:

> This [$1000 child support] amount is a deviation from the child support guidelines and is based upon the accustomed standard of living of the child and that husband has assets in addition to his monthly net income which has recently been approximately $4,800.00. It is agreed that this amount shall be paid directly to the wife by the fifth of every month.

In the divorce, the parties approximated an even division of the marital assets, resulting in Vicki retaining the home and furnishings. Randall moved into a one-bedroom apartment in Rogers, Arkansas. Each party retained their own retirement accounts. Vicki was employed as a professor at the University of Arkansas, earning about $90,000 annually.

On November 19, 2003, Randall moved to vacate or modify the agreed order pursuant to Ark. R. Civ. P. 60(a), stating that he agreed to this provision while acting pro se, that he had not

found a job as he had expected to, that he was approved for but had not received the unemployment benefits in a timely manner, and that the October 3 order represented a miscarriage of justice. This petition was heard and denied in December 2003, though the trial court stated that if in the future there was a change in circumstances regarding income, the trial court could take evidence at that time.

On January 16, 2004, Vicki moved for contempt on the basis that Randall had not yet paid child support for the months of December and January. Randall responded and filed a counterclaim in May 2004, petitioning for a reduction in his child support.[1] Randall stated that as of March 12, 2004, he was no longer receiving any unemployment benefits and that despite diligent efforts he had not found employment. Vicki resisted Randall's petition, arguing that there was no material change in circumstances since the time of their divorce.

Both Vicki's request to hold Randall in contempt and Randall's petition to modify child support were heard on October 1, 2004. Vicki testified that since the filing of her petition for contempt, Randall was current on his child support, and he even overpaid her $500 in July 2004. Nonetheless, Vicki complained that the child support was not always paid on or before the fifth of the month. She said that in the previous year, only four months of support was either paid or postmarked by the due date. Vicki testified that she and her son lived in the house she and Randall bought in 2002 in Fayetteville, Arkansas. She estimated her expenses for herself and her son at $6300 per month, though she stated that her take-home income as Assistant Professor of Information Systems was $5300 per month. She also said that she had earned another $4200 in summer 2004 for research that was not listed on her Affidavit of Financial Means. Vicki explained that she had $1537 per month taken out of her paycheck for pension benefits and stock purchase plans. Vicki, a woman in her late forties, presently had about $56,000 in her retirement account. In order to keep their son in the lifestyle to which he had become accustomed, which included several summer camps, sports activities, and music lessons, she said she had taken funds from her

---

[1] Randall also requested that the trial court order Vicki to cease her refusal to communicate with him regarding visitation. This issue is not pertinent to the present appeal.

savings account but not from her retirement accounts. Vicki agreed that Randall had paid about $800 in extracurricular expenses thus far.

Randall testified that their son was presently eleven years old. He agreed that he wanted to continue to support his son to the best of his ability, and that he was not asking to be excused from responsibility for half of other expenses listed in the agreed order (extracurricular activities, medical expenses over insurance, college). Fifty-seven-year-old Randall held a degree in mathematics, but he suffered from an arthritic back, which prevented him from being able to stand for long periods of time. Randall said that though he was unemployed in September 2003, he knew that unemployment benefits were forthcoming, he expected to use those benefits to pay child support for his son, and he felt sure he would quickly find gainful employment. He sent out approximately 300 letters seeking employment, and he sought professional recruiter services in Fayetteville, Little Rock, and Dallas. He was also working with the Employment Security Department of Arkansas, and he had searched through a temporary agency in Rogers. All of those efforts were unsuccessful to date.

He said that he retained one retirement account valued at approximately $133,500, but he had liquidated his other smaller retirement accounts, stocks, and some of his deceased mother's assets to pay for child support and living expenses. He incurred a ten-percent penalty on each retirement account withdrawal. Including the unemployment checks, his bank account deposits for the last year totaled approximately $45,000. Bank statements and financial documents supported those figures. Randall requested that his child support obligation be reduced to $500 per month, given his current circumstances. Randall said that if he found a job, he should pay $1000 per month child support.

Randall testified that he wanted to support his son, but he did not want to spend all of his retirement to that end. Randall said that he presently drove a 1996 Toyota Camry with 160,000 miles on it. Randall's one-bedroom apartment in Rogers cost $395 per month rent. He expressed a desire to eventually move into a two-bedroom apartment so that their son would not have to sleep on the couch when he visited. He said that his only recreation that did not involve his son was a trip to see relatives in Houston for Thanksgiving.

The trial court took the case under advisement and conducted a hearing on November 18, 2004, to announce her

decision. The trial judge explained that she had observed the parties and their demeanor, and she had studied the exhibits carefully, resulting in her ability to make conclusions regarding credibility of the parties and the reasonableness and consistency of their positions. The trial judge found credible that Randall lived a modest lifestyle; that he had actively sought employment as he testified; that he agreed in the divorce to pay in excess of the family support chart based upon his former income despite his unemployment at the time; that Vicki received a net income in excess of her stated monthly expenses; that the child was not being neglected in any manner; that Randall was capable of earning an imputed monthly income of $3500; and that the family support chart on that amount would be $525 per month retroactive to the date of his request for a modification.

The trial court explained that pursuant to statutory law, case law, and Administrative Order Number 10 issued by our supreme court, the parties could not make a permanently binding contract on the issue of child support. Instead, that was a matter over which the trial court retained jurisdiction as a matter of public policy. An order was entered on December 14, 2004, commemorating these findings. Appellant filed a timely notice of appeal.[2]

Appellant Vicki contends on appeal that the trial court erred in reducing appellee Randall's child support obligation from $1000 to $525 per month because (1) it was clearly erroneous to find a material change in circumstances sufficient to modify child support, and (2) it was clearly erroneous to conclude that the chart amount was not rebutted by the child's standard of living and appellee's possession of assets other than regular income. We disagree with both of her assertions and affirm the trial court's decision.

We review child-support awards de novo on the record. *Davie v. Office of Child Support Enforcement*, 349 Ark. 187, 76 S.W.3d 873 (2002) (citing *Nielsen v. Berger-Nielsen*, 347 Ark. 996, 69 S.W.3d 414 (2002)). In de novo review cases, we will not reverse a finding of fact by the trial judge unless it is clearly erroneous. *Id.* (citing *Norman v. Norman*, 342 Ark. 493, 30 S.W.3d 83 (2000)). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed.

---

[2] Randall filed a notice of cross appeal but did not pursue such an appeal before us.

*Id.* (citing *Nielsen, supra*). Further, we give due deference to the trial judge's superior position to determine the credibility of witnesses and the weight to be accorded to their testimony. *Id.*

The amount of child support lies within the sound discretion of the trial judge, and the trial judge's finding will not be reversed absent an abuse of discretion. *Ford v. Ford,* 347 Ark. 485, 65 S.W.3d 432 (2002) (citing *McWhorter v. McWhorter,* 346 Ark. 475, 58 S.W.3d 840 (2001); *Kelly v. Kelly,* 341 Ark. 596, 19 S.W.3d 1 (2000); *Smith v. Smith,* 337 Ark. 583, 990 S.W.2d 550 (1999)). The trial judge is required to refer to the child-support chart, and the amount specified in the chart is presumed to be reasonable. *Id.* (citing *Smith v. Smith, supra*).

Appellant first contends that appellee failed to show a material change in circumstances since the last order that would warrant a reduction in child support. Appellant acknowledges that the trial court retains jurisdiction over child support matters, but she asserts that at the time of the divorce, appellee was unemployed and receiving no income — just as when he petitioned for a reduction. It must be remembered that a trial court always retains jurisdiction over child support as a matter of public policy, and no matter what an independent contract states, either party has the right to request modification of a child support award. *Alfano v. Alfano,* 77 Ark. App. 62, 72 S.W.3d 104 (2002). At the time of the divorce, appellee had been approved for unemployment benefit payments that provided $1000 per month in income, despite their being tardy in their delivery to appellee. Arkansas Code Annotated section 9-14-107 (Repl. 2003) provides that any change greater than twenty-percent or $100 in the payor's monthly gross income constitutes a material change in circumstances sufficient for a petition for modification of child support. Appellee's unemployment benefits expired in March 2004, so his petition in May 2004 in which his income was shown to have decreased from $1000 per month to $0 per month was a material change in circumstances.

The present set of facts is markedly distinguishable from *Schwarz v. Moody,* 55 Ark. App. 6, 928 S.W.2d 800 (1996), which appellant cites. In *Schwarz v. Moody,* child support was not eliminated upon a request for modification because the mother was unemployed at both the initial setting of minimal child support required by law of an unemployed person and at her later request for an elimination of that duty. In this instance, the payor's original obligation was set in excess of the child support chart based upon

his expected acquisition of employment commensurate with his former income, with deviation upward for the child's standard of living. Although he had unemployment benefits for a while, the income situation changed materially in the ensuing months. We affirm this point on appeal.

■ Appellant next contends that the trial court erred in modifying the child support obligation because the family support chart amount on the imputed income was rebutted by proof of the child's standard of living and appellee's possession of other assets with which he could satisfy his support obligation. Appellant argues that the evidence showed that appellee was able to deposit nearly $40,000 in monies from his other assets in the course of the year without making any appreciable reduction in the overall value of his retirement. Despite the trial court having imputed $3500 monthly income to appellee for purposes of child support, which the court translated into a $525 per month child support duty, appellant maintains that the child's lifestyle requires $1000 per month support, which appellee has the ability to fund. In short, appellant contends that the trial court clearly erred by not deviating upward from the child support chart and leaving support at $1000 per month. We affirm the trial court.

The family support chart and statutory law set forth the presumption that the amount applicable under the chart is the correct amount. In particular, Arkansas Code Annotated section 9-12-312(a)(2) (Repl. 2002) provides:

> In determining a reasonable amount of support, initially or upon review to be paid by the noncustodial parent, the court shall refer to the most recent revision of the family support chart. It shall be a rebuttable presumption for the award of child support that the amount contained in the family support chart is the correct amount of child support to be awarded. Only upon a written finding or specific finding on the record that the application of the support chart would be unjust or inappropriate, as determined under established criteria set forth in the family support chart, shall the presumption be rebutted.

We are hard pressed to hold that the trial court erred where it set an imputed income to appellee and then applied *Administrative Order*

*Number 10* to that amount.[3] It was incumbent upon appellant to rebut that presumption, which she did not do. The trial court expressed her understanding of the applicable law, in particular *Administrative Order Number 10*. The trial judge specifically noted that the child's accustomed life style was being accommodated and that appellee was in fact earning no income whatsoever. Obviously, the chart amount was not deemed to be unjust or inappropriate based upon the criteria applied to these facts. Because the trial court followed applicable law in this instance in setting an equitable amount of child support, we affirm its order.

BIRD, CRABTREE, and ROAF, JJ., agree.

GRIFFEN and BAKER, JJ., dissent.

WENDELL L. GRIFFEN, Judge, dissenting. I would reverse in this case because the trial court's order is based on an erroneous finding of fact that appellee was receiving unemployment benefits when the divorce decree was entered. The parties' settlement agreement expressly stated that the $1000 monthly child support was based on the child's accustomed standard of living and the fact that appellee had assets in addition to his monthly net income, which the decree stated "has recently been approximately $4,800."

Although it was not made known to the trial court at the time of the parties' divorce, appellee was unemployed at that time, having lost his job approximately one month before the order was entered. Appellee anticipated receiving unemployment benefits of $1000 per month and did, in fact, qualify to receive such benefits for the period between September 2003 to mid-March 2004. However, he did not receive his first unemployment check until November 2003.

At the conclusion of the hearing on the parties' motions, the trial court erroneously found that when the parties executed the property agreement, appellee was unemployed and was also re-

---

[3] Appellant did not raise or contend before the trial court that the child support award is inconsistent with the child support chart as applied to appellee's imputed income; nor does she argue such in this appeal. However, the dissenting opinion raises the issue and then argues the point on behalf of appellant. We occasionally discern issues in appeals that might have merit but were either not preserved for review by raising it before the trial court or by not arguing the matter on appeal, or both. Yet we would violate basic appellate jurisprudence if we followed the dissent's lead in this instance and began raising and addressing the merits of unappealed issues.

ceiving $1000 in unemployment benefits (which had since expired). The court further determined that appellee's income had been reduced by $5000 per month but that there was no credible evidence by which it could determine how much money he currently received from his assets. Because appellee was highly educated and was capable of earning a sufficient income to pay child support, the court determined that "he can find a job in the amount of $3500 monthly" and reduced appellee's child support to $525 monthly. The court thus found that there had been a change of circumstance to warrant modification of child support, but found no justification for deviating from the Child Support Chart.

I would reverse the trial court's order because it was clearly based on an erroneous finding of fact: that appellee was receiving unemployment benefits at the time the divorce decree was entered. Although appellee was apparently *eligible* to receive unemployment benefits for the month of October 2003, when the divorce decree was entered, he did not receive any unemployment benefits until November 2003, after the order was entered. In addition, though the trial court in the instant action stated that appellee's income had been reduced by $5000 per month, it is not apparent how the court determined that appellee lost $5000 per month.

The majority states that the change of circumstances is shown because, after the divorce decree was entered, appellee's unemployment benefits decreased from $1000 per month to $0 per month. Had appellant been receiving unemployment benefits of $1000 per month at the time the trial judge initially awarded child support, the majority's position might be more persuasive. However, we cannot ascertain, *a priori*, what decision the trial court would have reached had it proceeded from an accurate understanding of the facts surrounding appellee's employment situation, especially given that the court was unable to determine if the amount of unearned income appellee currently receives from his assets constitutes a change of circumstances. Absent proof regarding the amount of appellee's unearned income, it would seem that his petition to modify child support rises or falls on the *other* evidence regarding his financial circumstances, including the true state of his financial circumstances at the time the divorce decree was entered that were not then known to the trial court. The majority's argument to the contrary notwithstanding, where the trial court was mistaken concerning appellee's financial circum-

stances at the time the initial decree was entered, then it is not positioned to find, as fact, that a change of circumstances has occurred since then.

Additionally, upon *de novo* review, I am not convinced that the trial judge properly applied the Child Support Chart in reducing appellee's child-support obligation. The trial judge orally stated that she was not deviating from the Chart, declared appellee's income to be $3500 monthly, and awarded $525 per month in child support. The problem is first, that the presumptive amount of child support for one child where the payor's monthly income is $3500 is $594, not $525; second, the amount of $525 is not a presumptive amount for one child at *any* income level according to the Chart. Thus, I do not see how we can affirm when we cannot tell whether the trial court properly applied the Child Support Chart.

Based on the reasons noted herein, I would reverse the trial court's order reducing appellee's child-support obligation and would remand for reconsideration of the evidence. I respectfully dissent.

KAREN R. BAKER, Judge, dissenting. I dissent because no change of circumstances occurred to support the trial court's reduction of child support. The order setting child support specifically states that the $1000 child support "amount is a deviation from the child support guidelines and is based upon the accustomed standard of living of the child and that husband has assets in addition to his monthly net income which has recently been approximately $4,800." Appellee first requested that the court relieve him of his agreed child support obligation slightly over one month from the entry of the divorce decree setting the award. At that time, he claimed that he had not obtained the expected comparable employment nor was he receiving the unemployment benefits as expected. The trial court correctly denied that petition because the question was not whether the parties' expectations were met, but whether the circumstances regarding income had changed.

Testimony at trial established that appellee had at least $133,500 in one retirement account and assets from his deceased's mother's assets. He stated that he had liquidated other smaller retirement accounts, stocks, and some of this mother's assets for his living expenses and some child support before he stopped paying it. His deposits from these assets and unemployment benefits

totaled approximately $45,000 for that last year, and he asked the trial court to use that number as income. As the majority acknowledges, appellee asked that his child support be reduced because "he did not want to spend all of his retirement" to support his child.

Appellant testified that to maintain the lifestyle to which their child was accustomed, she had taken funds from her savings account but not yet from her retirement account which totaled about $56,000.

The majority finds that the "payor's original obligation was set in excess of the child support chart based upon his expected acquisition of employment commensurate with his former income, with deviation upward for the child's standard of living," but that the expiration of appellee's unemployment benefits was a material change in circumstances because the cessation of those benefits resulted in a decrease of $1000 per month income.

No, the cessation of benefits did not result in a decrease of appellee's income. Appellee was solely in control of how much, when, and in what manner his assets would be used to support himself and his son. Although diminution of earnings is a common ground for modification, a petition for modification will be denied if the change in financial condition is due to the fault, voluntary wastage, or dissipation of one's talents or assets. *Reid v. Reid,* 57 Ark.App. 289, 944 S.W.2d 559 (1997). *See generally Pierce v. Pierce,* 268 Ark. 864, 596 S.W.2d 364 (Ark.App.1980). Appellant chose what, how, and when to use his assets. On the one hand, the courts must not unduly interfere with the personal lives and career choices of individuals merely because they have been involved in a divorce. On the other hand, because there has been divorce, the courts are thrust into the middle of the parties' personal lives in order to protect the interests of the minor children who are also unwilling participants in the divorce. *Grady v. Grady,* 295 Ark. 94, 747 S.W.2d 77 (1988).

In this case, child support was set in excess of the chart amount in order to maintain the child's standard of living and was based upon the fact that appellee had assets to pay the support for the child and himself. A supporting spouse does not have total discretion in making decisions that affect the welfare of the family if the minor children have to suffer at the expense of those decisions. *Grady, supra.* The definition of income for child support purposes is intentionally broad to encompass the widest range of sources consistent with this state's policy to interpret income

broadly for the benefit of the child. *Ford v. Ford,* 347 Ark. 485, 65 S.W.3d 432 (2002). Because the child-support guidelines are remedial in nature, they must be broadly construed so as to effectuate the purpose sought to be accomplished by their drafters. *Pannell v. Pannell,* 64 Ark.App. 262, 981 S.W.2d 531 (1998).

While courts have broad discretionary powers to modify child support provisions when such modification is in the best interest of the child, and no hard and fast rule can be established regarding specific changes in circumstances or the necessary degree of the changes, see *Guffin v. Guffin,* 5 Ark.App. 83, 632 S.W.2d 446 (1982) (overruled on other grounds), a change in circumstances must still be shown before a court can modify an order regarding child support, and the party seeking modification has the burden of showing a change in circumstances. *Reynolds v. Reynolds,* 299 Ark. 200, 771 S.W.2d 764 (1989); *Ross v. Ross,* 29 Ark.App. 64, 776 S.W.2d 834 (1989). The assumption is that the trial court correctly fixed the proper amount in the original divorce decree. *Id.* Furthermore, the liberality of the original allowances cannot afford grounds for modification. *Hurley v. Hurley,* 255 Ark 68, 498 S.W.2d 887 (1973).

In this case, the trial court entered the child support award when appellee was unemployed and receiving no unemployment benefits. The only factual change from the time the decree was entered was that appellee no longer wanted to use his assets to support his son. A change in a payor's desire, or lack thereof, to support a dependent child is not a proper basis to find a change of circumstances. The effect of the majority's decision is to require the custodial parent to deplete her assets in order to maintain the minor child's standard of living, or to reduce the lifestyle to which the child is accustomed. Nothing shows how the court-ordered shift of reduction of assets to the appellant or a reduction in lifestyle for the child is in the child's best interest. No case law supports the proposition that a custodial parent must first deplete his or her assets before a noncustodial parent's assets may be liquidated. Furthermore, the original order in this case specifically relied upon the noncustodial parent's assets in setting the award of support.

Accordingly, we should reverse.