James Darren MARTIN *v.*
Kaci Weeks Martin SCHARBOR

CA 05–1016                                    233 S.W.3d 689

Court of Appeals of Arkansas
Opinion delivered April 12, 2006

*James Law Firm*, by: *Patricia A. James*, for appellant.

*Eugene D. Bramblett*, for appellee.

ROBERT J. GLADWIN, Judge. This is an appeal from an order in which the Ouachita County Circuit Court increased appellant's child-support payments and modified appellant's visitation with the parties' minor children but declined to modify other aspects of the parties' property-settlement and child-custody agreement ("Agreement").[1] Appellant raises several points on appeal, alleging that the trial court erred: (1) by denying his request to modify the divorce decree when the incorporated Agreement was not intended to be an independent contract; (2) by denying his request to modify certain expenses that were clearly "in the nature of" child support; (3) by modifying appellant's child-support payments in accordance with appellee's oral amendment to her petition to modify; (4) by modifying appellant's visitation schedule. We affirm.

The parties were divorced on November 2, 1999. Two children were born of the marriage, a daughter, R.B.M., and a son, H.L.M., who were nine years old and eight years old, respectively, at the time of the hearing on the parties' petitions to modify the

---

[1] The "other aspects" specifically deal with paragraph seven of the Agreement whereby appellant agreed to provide for medical and dental insurance, as well as pay for all such expenses not covered by insurance, and to provide school clothes and pay for other school-related expenses until the children reach the age of eighteen.

Agreement. The original Agreement was approved by the trial court and incorporated by reference into the divorce decree, and it was modified, by agreement of the parties, on August 8, 2000, and on May 20, 2002. On October 14, 2004, appellant filed a petition to modify the Agreement, requesting specifically a decrease in his child-support payments, the termination of his responsibility to pay all medical and health expenses not covered by health insurance and any other items for the children beyond the required child-support payments, an increase in the amount of visitation he received with the children, and the modification of certain visitation-related logistical terms. On November 2, 2004, appellee filed a response and a counter-petition for contempt and modification of visitation. After a hearing, the trial court entered an order on May 31, 2005, stating that the general terms of the Agreement could not be modified because it was an independent agreement. The order did, however, increase appellant's child-support obligation from $127 per week to $585 per month, modify appellant's visitation outside the guidelines to accommodate the children's swim schedule, and award attorney's fees to appellee. Appellant filed a timely notice of appeal on June 27, 2005.

We review child-support awards de novo on the record. *McKinney v. McKinney*, 94 Ark. App. 100, 226 S.W.3d 37 (2006). In de novo review cases, we will not reverse a finding of fact by the trial judge unless it is clearly erroneous. *Id.* A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed. *Id.* Because the question of whether the trial court's findings are clearly erroneous turns largely on the credibility of witnesses, we give special deference to the superior position of the trial judge to evaluate the witnesses, their testimony, and the children's best interest. *Ford v. Ford*, 347 Ark. 485, 65 S.W.3d 432 (2002). There are no cases in which the superior position, ability, and opportunity of the trial judge to observe the parties carry as great a weight as those involving minor children. *See Vo v. Vo*, 78 Ark. App. 134, 79 S.W.3d 388 (2002).

Our supreme court has stated that it is axiomatic that a change in circumstances must be shown before a court can modify an order for child support. *See Evans v. Tillery*, 361 Ark. 63, 204 S.W.3d 547 (2005). In addition, the party seeking modification has the burden of showing a change in circumstances. *See id.* In determining whether there has been a change in circumstances

warranting adjustment in support, the court should consider remarriage of the parties, a minor reaching majority, change in the income and financial conditions of the parties, relocation, change in custody, debts of the parties, financial conditions of the parties and families, ability to meet current and future obligations, and the child-support chart. *See id.* It is the ultimate task of the trial judge to determine the expendable income of a child-support payor. *Brown v. Brown*, 76 Ark. App. 494, 68 S.W.3d 316 (2002). A trial court's determination regarding whether there are sufficient changed circumstances to warrant a modification in child support is a question of fact that will not be reversed unless it is clearly erroneous. *Woodson v. Johnson*, 63 Ark. App. 192, 975 S.W.2d 880 (1998).

Additionally, the trial court maintains continuing jurisdiction over visitation and may modify or vacate those orders at any time when it becomes aware of a change in circumstances or of facts not known to it at the time of the initial order. *Meins v. Meins*, 93 Ark. App. 292, 218 S.W.3d 366 (2005). While visitation is always modifiable, courts require more rigid standards for modification than for initial determinations in order to promote stability and continuity for the children and in order to discourage repeated litigation of the same issues. *Id.* The party seeking a change in the visitation schedule has the burden to demonstrate a material change in circumstances that warrants a change in visitation. *Id.* The best interest of the children is the main consideration. *Id.* There are several factors to take into consideration when determining reasonable visitation, including: (1) the wishes of the children; (2) the capacity of the party desiring visitation to supervise and care for the children; (3) problems of transportation and prior conduct in abusing visitation; (4) the work schedule or stability of the parties; (5) the relationship with siblings or other relatives. *Id.*

### I. Whether the Agreement is an Independent Contract

Appellant argues that the Agreement amounted to nothing more than "an agreement as to what the [c]ourt should put in its decree to avoid the taking of proof." He contends that paragraph eleven of the Agreement and paragraph five of the divorce decree make clear the intention of the parties by incorporating the Agreement into the divorce decree in order to give it the full force and effect of a decree of the trial court. He asserts that the parties intended for the Agreement to be merged with the divorce decree,

thereby giving the trial court full ability to modify its terms. *See Law v. Law*, 248 Ark. 894, 455 S.W.2d 854 (1970) (whereby an agreement becomes merged in the decree and loses its independent contractual nature). Finally, he claims that appellee offered no testimony at the hearing that would satisfy her burden of proving that the Agreement was an independent contract giving rise to a separate cause of action. *Id.*

■ Appellee counters that the trial court was correct in determining that it was without authority to grant appellant's requested relief with regard to paragraph seven of the Agreement, as modified by the parties on May 12, 2002.[2] She contends that both the language of the Agreement and the actions of the parties at the time of their divorce clearly indicate that they intended the Agreement to be an independent contract. Paragraph ten of the Agreement specifically states: "It is the purpose of the parties to this Agreement that it fully and finally settle, resolve, and terminate any and all claims, demands, and rights of whatever kind or nature between the parties." Both parties signed the Agreement and acknowledged that they had been represented by counsel prior to executing the Agreement. Appellee points out that this court previously found a settlement agreement that contained substantially similar language to be an independent contract. *See Kennedy v. Kennedy*, 53 Ark. App. 22, 918 S.W.2d 197 (1996). We agree that the Agreement was intended to be an independent contract and find that the trial court was not clearly erroneous on this point; accordingly, we affirm with respect to this issue.

## II. Whether Expenses Were "In The Nature Of" Child Support and Therefore Modifiable

Appellant maintains that, even if this court determines that the Agreement is an independent contract, his obligation to pay for school clothes, school-related expenses, and medical and dental bills not covered by insurance, clearly falls within the definition of child support and is therefore modifiable. Child support is defined as "only those support obligations which are contained in a decree

---

[2] The only modification on this date was that appellee, rather than appellant, would be responsible for maintaining health insurance coverage on the children and that the parties would equally divide any expenses related to cosmetic dental work, including braces. Appellant remained responsible for all other medical and dental expenses not covered by insurance.

or order of the circuit court which provides for the payment of money for the support and care of any child or children." *See* Ark. Code Ann. § 11-9-110(g) (Repl. 2002). Appellant correctly points out that a trial court always retains jurisdiction over child support as a matter of public policy, and no matter what an independent contract states, either party has the right to request modification of a child-support award. *McKinney, supra.*

The recent case of *Hyden v. Hyden,* 85 Ark. App. 132, 148 S.W.3d 748 (2004), is cited by appellant to support his proposition that educational expenses are "in the nature of support" and therefore modifiable. He contends that the expenses he sought to modify in this case were consistent with those expenses at issue in *Hyden,* and as such, the trial court had the authority to modify them. Additionally, he claims that modification was warranted because there was a change in circumstances. At the time the parties divorced, appellant started his own business, which was apparently successful for a time. Subsequently, however, circumstances required him to file bankruptcy and close his business. He also relocated to Rogers, Arkansas, where he lives with his current wife and son, who was four years old at the time of the hearing. Appellant maintains that he had to accept employment that paid considerably less than he was previously earning and that he now makes approximately $14,000 to $15,000 per year. Appellant references the definition of "change in income" that constitutes a change in circumstances sufficient to warrant the modification of child support:

> A change in gross income of the payor in an amount equal to or more than twenty percent (20%) or more than one hundred dollars ($100) per month shall constitute a material change of circumstances sufficient to petition the court for review and adjustment of the child support obligated amount according to the family support chart after appropriate deductions.

Ark. Code Ann. § 9-14-107(a) (Supp. 2005). He contends that his income "decreased drastically" after he filed bankruptcy, by more than twenty percent, which entitles him to a modification of child support.

Appellee contends that *Hyden, supra,* does not support appellant's position, and we agree that this case is distinguishable. In *Hyden,* the amount of child support was tied to where the child attended school and dealt with a private boarding school in

Virginia. So, although the expenses in question were related to the child's education, they also covered expenses related to room, board, etc., that would normally be covered under typical child-support payments for a child living with the custodial parent. *Hyden, supra.* Appellee maintains that appellant's agreed-upon obligation to pay for school clothes and related expenses and the uninsured medical and dental expenses were "in addition to," and not tied to, his scheduled child-support payments. She argues that one did not depend upon the other, as expressly stated in paragraph seven of the Agreement.

There are examples of this court upholding and enforcing a provision made in a property-settlement agreement to pay for the needs of children over and above child support and finding that such provisions are not subject to modification by the trial court. *See Rogers v. Rogers,* 83 Ark. App. 206, 121 S.W.3d 510 (2003); *Harris v. Harris,* 82 Ark. App. 321, 107 S.W.3d 897 (2003). Appellant points out that both of these cases dealt with agreements to pay college expenses for children who had reached the age of majority, which differs from the situation where the expenses are related to the support of minor children. Those "child-support" expenses are subject to either party's request for modification regardless of what the Agreement says. *See Alfano v. Alfano,* 77 Ark. App. 62, 72 S.W.3d 104 (2002). These cases are also distinguishable from the current situation, but the bottom line is that appellant has failed to show that (1) the expenses he sought to modify were not "in addition to" and independent of his child support obligation, or (2) there in fact has been a sufficient change in circumstances due to the fact that he abandoned his request to decrease child support and failed to provide the required financial documentation to support his claims of a decreased income level. *See Weir v. Phillips,* 75 Ark. App. 208, 55 S.W.3d 804 (2001) (holding that the burden of proof is on the party seeking modification to show a sufficient change of circumstances). Additionally, appellant failed to object to the trial court's imputation of his income at $25,500 per year and the related increase in his child-support obligation. We affirm on this point as well.

*III. Whether the Trial Court Erred in Allowing Appellee
to Orally Amend Her Petition*

Appellant objected to the trial court's allowing appellee to amend her petition to modify the Agreement for increased child

support because he had not been given notice or an opportunity to respond at the hearing. He cites Ark. R. Civ. P. 15 (2005) in support of his argument, which states:

> A party may amend his/her pleadings at any time without leave of the Court. Where, however, upon motion of an opposing party, the Court determines that prejudice would result or the disposition of the cause would be unduly delayed because of the filing of an amendment, the Court may strike such amended pleading or grant a continuance of the proceeding.

Appellant argues that he was prejudiced by the trial court's granting appellee's oral motion to amend because he was not allowed to properly respond, and further, because the amendment would not have occurred absent prompting by the trial court.

■ In response, appellee reminds us that it was appellant who initiated the original petition for modification of the Agreement, based in part on a request to reduce his child-support obligation. Appellee served appellant with interrogatories and requests for production of documents to determine whether he had, in fact, experienced a significant decrease in income. Appellant failed to provide any meaningful information about his current income level and then proceeded to withdraw his request to reduce his child-support obligation at the beginning of the hearing. As appellee points out, it is difficult to believe that appellant would claim a lack of notice that child support was at issue when he initiated the current action to reduce his child-support obligation. Additionally, appellant has failed to present any proof of the claimed "prejudice" to which he was subjected. Because we will not reverse unless error and prejudice have been shown, *Lucas v. Grant*, 61 Ark. App. 29, 962 S.W.2d 388 (1998), we reject this argument and affirm on this point.

### IV. Modification of Visitation

Under the Agreement, appellant's visitation with his children was "subject to reasonable and seasonable visitation rights." He cites *Jones v. Jones*, 26 Ark. App. 1, 759 S.W.2d 42 (1988), for the proposition that, as a general rule, parties to a divorce action may enter into an independent agreement to settle property rights which, if approved by the trial court and incorporated into the divorce decree, may not be subsequently modified by the trial

court. Appellant asserts that, because the trial court determined that the Agreement was just such an agreement, it follows that the modification of visitation should have been subjected to the same restrictions as the other provisions in the Agreement. He further contends that if this court agrees with the trial court that the Agreement is an independent contract that cannot be modified with respect to paragraph seven, then the visitation terms covered therein are not modifiable for the same reason.

Alternatively, if this court finds that visitation is modifiable under the Agreement, appellant claims that the trial court erred because the terms of the modification were not in the best interest of the children. *See Hass v. Hass*, 80 Ark. App. 408, 97 S.W.3d 424 (2003) (finding that the party seeking a change in visitation has the burden to show a material change in circumstances and that the primary consideration is what is in the best interest of the children). As previously stated, in determining reasonable visitation, the court considers the following factors: (1) the wishes of the children; (2) the capacity of the party desiring visitation to supervise and care for the children; (3) problems related to transportation and prior conduct in abusing visitation; (4) the work schedule or stability of the parties; (5) the relationship with siblings and other relatives. *See id.*

Appellant contends that there was a material change of circumstances warranting the modification of his visitation with the children. Because of his relocation from the Camden area to Rogers, Arkansas, he was unable to spend alternating weekends with the children, so he requested visitation on all the long weekends during the school year and for six weeks during the summer break according to the visitation guideline. The trial court granted visitation of one long weekend per month, to coincide with long weekends in the children's school calendar; appellant was also granted visitation according to the visitation guidelines regarding spring break, Thanksgiving, and Christmas, unless the parties could agree in writing to another visitation plan. Finally, and most contentious, was the grant of visitation during summer break in the amount of four weeks instead of the requested six. Appellant was awarded visitation during the first full week in June, the first full week in July, and two consecutive weeks following the children's final swim meet of the summer.

The primary issue that was raised with regard to the summer visitation schedule dealt with the children's participation in the South Arkansas Swim Association ("SASA"). It is undisputed that

the children practice every morning, Monday through Friday, beginning on the sixth day of June and continuing through their final weekend-swim meet on the twenty-third day of July. As of the time of the hearing, the children had participated in the SASA program during the previous four summers and had distinguished themselves as good swimmers. Appellant concedes that the swim schedule caused him some concern and hardships; however, he claims that there was no indication at the hearing that he would fail to make every effort to see that the children were at the scheduled swim meets. He argues that no consideration was given to his desire to spend quality time with the children without interruption. He recognizes the importance of their participation in the activity but alleges that it is in their best interest to spend as much time with him as possible.

It is well settled that a trial court maintains continuing jurisdiction over visitation and may modify or vacate such orders at any time on a change of circumstances or for knowledge not known at the time of the initial order. See Meins, supra; Stellpflug v. Stellpflug, 70 Ark. App. 88, 14 S.W.3d 536 (2000). Appellee points out that both she and appellant requested that the trial court modify visitation because of his relocation to a town some 350 miles away. Appellee agrees that appellant's relocation indeed constituted a material change of circumstances that justified a modification of the visitation schedule. She contends that the trial court fashioned the modification taking into account concerns raised by both parties, as well as looking at what was best for the children.

In short, based upon our de novo review of the record in this case, we are simply not left with a definite and firm conviction that a mistake has been made with respect to this issue, and we are not willing to substitute our judgment for that of the trial court, particularly in light of the fact that we are dealing with a change in visitation, not a change in custody. In Harris v. Tarvin, 246 Ark. 690, 439 S.W.2d 653 (1969), our supreme court rejected an argument that visitation cannot be modified unless there is a sufficient change in circumstances to warrant a change of custody. The supreme court explained that visitation rights may be modified upon a proper showing that it is a change to which the petitioning parent is reasonably entitled because of changed circumstances pertinent to visitation and also that the welfare and best interest of the child dictate a change. We find no clear error in the trial court's finding that appellee had shown there had been a

material change in circumstances pertinent to visitation and also that the children's best interest dictated a change in visitation.

## V. Award of Attorney's Fees

For his final point, appellant claims that the trial court erred in awarding appellee a portion of her attorney's fees in this matter to be paid by him. Under Ark. Code Ann. § 9-12-309(a)(2) (Repl. 2002), attorney's fees are allowed in the final decree of an action for absolute divorce, and the trial court may award the wife or husband costs of court, a reasonable attorney's fee, and expert witness fees. Additionally, subsection (b) states that the trial court may allow either party additional attorney's fees for the enforcement of alimony, maintenance, and support provided for in the decree. Ark. Code Ann. § 9-12-309(b) (Repl. 2002). Appellant contends that neither subsection applies in this case. There were no attorney's fees awarded in the initial divorce decree, and appellant argues that the instant case was not an action to enforce alimony, maintenance, or support provided for in the decree. He asserts that it was merely an action to modify his obligations under the decree, and as such, he contends that the trial court erred in making the award to appellee.

Appellee points out that in Arkansas, attorney's fees are allowed by the courts when such fees are authorized by contract or by statute. *See Riddick v. Streett*, 313 Ark. 706, 858 S.W.2d 62 (1993). In the instant case, the parties' liability for attorney's fees is set by contract, specifically in paragraph twelve of the Agreement, which states: "Any wrongful and groundless refusal by one party to comply with the provisions of this agreement necessitating legal expenses by the other party shall result in the party wrongfully refusing compliance being responsible for said legal expenses." The trial court found appellant in contempt of court for making child-support payments payable to the minor children rather than to appellee, for failing to make child-support payments in a timely fashion, for failing to pay drug and dental expenses incurred on behalf of the minor children that were not covered by insurance, and for failing to furnish appellee with the required copies of his W2 and 1099 tax forms. These were all obligations to which appellant agreed under the Agreement. The trial court also denied appellant's request to modify his obligation to pay for the expenses contained in paragraph seven of the Agreement. As the trial judge noted, "[Appellant] initiated this round of pleadings resulting in

the hearing held on May 10, 2005[,] and he came up short on all issues." Courts have recognized the inherent power of a court of equity to award attorney's fees in domestic relations proceedings and found that whether there should be an award for fees, and if so how much, are matters within the discretion of the trial court. *See Rogers, supra.* Under the circumstances of this case, the trial court did not abuse its discretion in awarding appellee an attorney's fee of $1,000. We affirm on this point as well.

Affirmed.

VAUGHT and CRABTREE, JJ., agree.