2010 Ark. App. 428

**Greg ROGERS, Appellant**

v.

**Linda JENNINGS (Rogers), Appellee.**

**No. CA 09-1376.**

Court of Appeals of Arkansas.

May 12, 2010.

---

11. *Wallis, supra.*

See also 83 Ark.App. 206, 121 S.W.3d 510.

Rebecca K. Brown, Brown Law Firm, P.A., Benton, for appellant.

Perry Yale Young, Jensen Young & Houston, PLLC, Benton, for appellee.

WAYMOND M. BROWN, Judge.

Greg Rogers and Linda Jennings (formerly Rogers) have been here before. In *Rogers v. Rogers* (*Rogers I* ),[1] the parties disputed various issues, including a provision in their property-settlement agreement requiring Rogers to pay their elder daughter's college expenses. The same provision, but this time as it relates to their younger daughter, is the subject of this appeal. After a hearing, the court awarded Jennings a $12,400.09 judgment, representing the amount it found that Rogers owed for their daughter's college expenses, and $750.00 in attorney's fees. Rogers brings five points on appeal: four of them challenging various aspects of the judgment for college expenses and a fifth challenging the circuit court's authority to award attorney's fees. We are troubled by the judgment in favor of Jennings, but Rogers failed to preserve the issue for appellate review. His other arguments regarding the payment of college expenses and the attorney-fee award lack merit in light of his agreement in the property-settlement agreement to be responsible for the college expenses. Thus, we affirm.

Rogers and Jennings were divorced on August 21, 1998. Two daughters were born of the marriage, Breanne and Kasey. When the parties divorced, they entered into a property-settlement agreement, wherein Rogers agreed to be responsible for their daughters' college expenses:

[Rogers] is to be actively involved in the selection of colleges for the children to attend. [Rogers] agrees to pay for books, tuition and expenses associated with attending college, which are not covered by scholarship funds, for the children. Payments are to be made directly to the provider or to the child, upon presentation to [Rogers] of a statement setting out the expense involved.

In *Rogers I,* the circuit court ordered Rogers to pay Breanne $300 a month while she remained a full-time college student. The circuit court characterized the payment as "spending money." We reversed, holding that the property-settlement agreement did not require Rogers to pay Breanne such an allowance.

The current case started when Jennings filed a "Motion to Enforce Decree," wherein she claimed that Rogers was not paying for Kasey's college expenses. The circuit court held a hearing on the matter and heard testimony from Kasey, Jennings, and Rogers. According to the testimony and introduced exhibits, Kasey attends the University of Texas at Austin (UT–Austin). While she was in high school, she and Rogers discussed selecting a college, taking entrance exams, and applying for financial aid. Rogers supported Kasey's decision to attend UT–Austin, albeit reluctantly due to the cost.

Rogers was sending her $500 a month when Kasey began college, but the parties dispute the circumstances under which the money was being sent. Kasey testified that Rogers was putting the money in her bank account every month. But she also stated that she spoke to him about ten times about whether that money was sufficient to cover her expenses. In one email to Kasey, Rogers wrote that he could not afford to send her more than $500 a month and that, "If you are determined to attend UT, then you better be willing to sacrifice

1. 83 Ark.App. 206, 121 S.W.3d 510 (2003).

because you will not have money to cover your costs." On cross-examination, she acknowledged that Rogers helped her prepare a budget, but she stated that the budget was not used to determine how much money he was to give her.

Jennings entered an exhibit showing a breakdown of the costs for the 2007–08 and 2008–09 academic years. The spreadsheet included tuition, books and supplies, fees, rent, electricity, cable, internet, a tutor for her Italian class, food, and the "UT Sports Package" (which provides tickets to every UT athletic event for the academic year). According to the exhibit, $6,165.84 was not paid in 2007–08, and $6,774.25 was not paid in 2008–09. Jennings requested that these amounts be paid to her as back child support. She also noted that, during the divorce, it was important for her to have her daughters' education paid, while Rogers wanted the marital home but lacked the money to buy her half of the equity. She stated that the agreement to provide for their daughters' education was the trade off.

Rogers admitted that he did not want to discourage Kasey from attending UT–Austin, but he wanted her to know that he was on a limited budget. He stated that Kasey knew how much he could pay her and that the amount came to $6000 a year. He testified that he could not afford to send her to UT–Austin without her scholarships and that he could not afford to pay anything more than he was paying. On cross-examination, Rogers stated that he and Kasey agreed to him paying her $500 a month and that he did not think he should be responsible for more than that. He also admitted that he had not paid her the three months prior to the hearing, but he explained that he had not done so because he had not heard from her for the ten months prior to the hearing.

The circuit court entered an order finding that Rogers was responsible for Kasey's books, tuition, and expenses associated with college, which at a minimum included room and board. And it found that the property-settlement agreement had not been modified. While it did not find Rogers in contempt for failure to abide by the terms of the property-settlement agreement, it awarded Jennings a $12,400.09 judgment and $750 attorney-fee award. It also ordered Rogers to abide by the terms of the divorce decree as it pertained to his obligation to pay Kasey's college expenses. Rogers then filed a timely notice of appeal.

We review domestic-relations cases de novo on the record, but we will not reverse a circuit court's findings unless they are clearly erroneous.[2] A finding is clearly erroneous when, although there is evidence to support it, we are left with a definite and firm conviction that a mistake has been committed.[3] In this review, we give due deference to the superior position of the circuit court to view and judge the credibility of the witnesses.[4]

Rogers makes four arguments regarding enforcement of the property-settlement agreement. First, he argues that the circuit court ignored the agreement between him and Kasey regarding payment of expenses. He further contends that the circuit court's order, in effect, improperly modified the property-settlement agreement. Second, he argues that, because the payment of college expenses was not child support, it was not payable to Jennings.

**2.** *Hunter v. Haunert,* 101 Ark.App. 93, 270 S.W.3d 339 (2007).

**3.** *Id.*

**4.** *Id.*

The circuit court's order awarded a $12,000 judgment to Jennings, and Rogers contends that Jennings was not entitled to any such award absent evidence showing that she made the payments he did not. Third, he asserts that the financial obligations being asked of him were unreasonable and argues that the circuit court lacks the authority to determine the "degree of performance" when a contract is unreasonable. Finally, he argues that the circuit court failed to consider fair criteria and standards with regard to the actions of all parties. Of these arguments, only the second is troubling. Thus, we address it last. The remaining arguments clearly do not warrant reversal.

■ Rogers's first argument is essentially a question of what is to be enforced. He recounts the exchanges between him and Kasey regarding the selection of colleges, the budget, and his determination that he would pay $500 a month. He claims that the evidence shows either a modification of the agreement between the parties, with Kasey acting as Jennings's agent or with Kasey acting on her own behalf as the recipient of the benefit, or a compromise between him and Kasey, which would allow Kasey to attend the college of her choice.

The problem, however, is that Rogers is the only party who referred to those conversations as an "agreement." Even assuming that Kasey, an intended third-party beneficiary, could modify the agreement (which we do not decide here), the circuit court did not err in concluding that there was no modification. The record does not show that Rogers "allowed" Kasey to attend UT–Austin in exchange for settling for $500 a month. Rather, it shows that Kasey made her decision to attend UT–Austin, and Rogers told her that he could only give $500 a month and that she "better be willing to sacrifice because you will not have money to cover your costs." Kasey's behavior after the fact is also evidence of a lack of modification, as she contacted him on multiple occasions to get extra money to cover her expenses.

■ Nor did the circuit court unilaterally modify the agreement. A property-settlement agreement, if approved by the court and incorporated into the divorce decree, may not be subsequently modified by the court.[5] Rogers correctly states that his obligation is limited to "books, tuition and expenses associated with attending college." And we reaffirmed this in *Rogers I* when we disallowed payments for spending money. Nonetheless, the record does not reveal that Rogers is being made responsible for expenses not associated with attending college. The term "expenses associated with attending college" is vague, and the only thing we can definitely conclude is that, by separately mentioning books and tuition, the phrase includes college expenses beyond those two items.[6] In awarding the judgment, the circuit court did not provide a breakdown of what the judgment was supposed to cover. But it was able to consider an

---

5. *Rogers I, supra* (citing *Jones v. Jones*, 26 Ark.App. 1, 759 S.W.2d 42 (1988)).

6. *See Carter v. Four Seasons Funding Corp.*, 351 Ark. 637, 97 S.W.3d 387 (2003) (citing *Pickens–Bond Constr. v. N. Little Rock Elec. Co.*, 249 Ark. 389, 459 S.W.2d 549 (1970) (stating that, when construing a contract, a court must endeavor to give meaning and effect to every word); *Miller v. Dyer*, 243 Ark. 981, 423 S.W.2d 275 (1968) (stating that a construction that entirely neutralizes one provision should not be adopted if the contract is susceptible of another which gives effect to all of its provisions); *Bailey v. Whorton*, 207 Ark. 849, 183 S.W.2d 52 (1944) (stating that, when it can be reasonably done, a court should give meaning to every sentence, word, and phrase in a contract)).

exhibit created by Jennings, which showed expenses for tuition, books and supplies, fees, the UT Sports Package, rent, electricity, cable, internet, a tutor for her Italian class, and food. According to the exhibit, Kasey was short $6,165.84 for the 2007–08 year and $6,774.25 for the 2008–09 year. The $12,400.09 awarded by the court is slightly less than the sum of the two numbers. The UT Sports Package cost Kasey $140, and it is possible that the circuit court, in calculating the award, deducted it from the total, thereby rendering moot Rogers's complaint that he should not be responsible for that expense. Given these calculations, we cannot say that the circuit court ordered Rogers to cover anything outside of the definition of "books, tuition and expenses associated with attending college." There was no improper modification, and we affirm on Rogers's first point.

■ Arguments under Rogers's third and fourth points can be addressed simultaneously. On his third point, Rogers contends that he could not financially perform the obligations "unreasonably required of him," and he argues that the circuit court did not have the authority |₈to determine the "degree of performance" when the contract is unreasonable. In his fourth point, Rogers charges the circuit court with failing to consider fair criteria and standards regarding the actions of the parties. He relies on factors outlined in *Newburgh v. Arrigo*,[7] a case from the Supreme Court of New Jersey, to argue that it is not fair for him to be responsible for Kasey's college expenses. He then notes evidence showing his inability to cover the expenses, Kasey's extra income earned at a part-time job, and the estranged relationship between the two. He argues that the circuit court erred in ignoring the evidence.

Part of his argument depends upon an "agreement" to allow Kasey to go to UT–Austin if she only accepted $500 a month from him. We have already rejected this argument. As for the remaining arguments, the answer is simple. Rogers agreed to be responsible for Kasey's college expenses when he divorced Jennings. And there was no corresponding duty for Kasey to minimize her expenses.[8] As both this court and our supreme court have stated, "The fact that appellant entered into an agreement which later appeared improvident to him is no ground for relief."[9] There is no ground for reversal on Rogers's third or fourth points.

■ |₉As mentioned above, the only argument that gives us pause is Rogers's second point. Here, he asserts that his obligation to pay Kasey's college expenses was not child support and that the property-settlement agreement directed the payments to be made directly to Kasey or to a third party. He also notes the lack of evidence on how much of the expenses were covered by Jennings. Thus, he argues, the court erred in awarding Jennings a judgment.

Jennings correctly calls out Rogers on labeling the payments "child support" when it suits him, but repudiating the label when it does not. His third and fourth

7. 88 N.J. 529, 443 A.2d 1031 (1982).

8. *See McDuffie v. McDuffie*, 313 S.C. 397, 438 S.E.2d 239 (1993) (stating that a parent may contractually obligate himself to pay a child's educational expenses beyond the age of majority, that an agreement to do so cannot be modified by the court without the parties' consent, and that—barring language to the contrary—such an agreement does not impose a duty for a child to minimize those expenses).

9. *Helms v. Helms*, 317 Ark. 143, 145, 875 S.W.2d 849, 851 (1994); *Carden v. McDonald*, 69 Ark.App. 257, 263, 12 S.W.3d 643, 647 (2000).

points on appeal hinge on these payments being labeled child support. To be clear, however, the obligation to pay college expenses was not child support, and the law as it relates to child support is inapplicable here. Further, as Rogers argues, the property-settlement agreement directed him to pay either Kasey or the school directly. It is not readily apparent why Jennings was entitled to judgment against Rogers. The problem, however, is that Rogers never made this argument before the circuit court. And we do not consider arguments raised for the first time on appeal.[10] Because that argument is not properly before this court and because none of Rogers's other arguments have merit, we affirm the $12,400.09 judgment in favor of Jennings for Rogers's failure to pay Kasey's college expenses.

■ Finally, Rogers challenges the $750 attorney-fee award. He presents several arguments to support his contention. First, the circuit court found that he was not in willful violation of the court's orders. Second, he relies on his already rejected argument that the circuit court |₁₀modified the property-settlement agreement. Third, he notes evidence showing that he did not receive a statement of Kasey's college expenses. Finally, he contends that, because Jennings was not entitled to judgment, she was not entitled to attorney's fees.

■ An award of attorney's fees is reviewed under the abuse-of-discretion standard.[11] Rogers failed to comply with

the divorce decree when he stopped sending Kasey money. Jennings had to go to court to enforce the divorce decree. In addition to the circuit court's inherent power to award attorney's fees in domestic-relations proceedings[12] and the statutory power to award them in breach-of-contract cases,[13] the property-settlement agreement itself had a provision allowing attorney's fees incurred to bring the other party in compliance with the agreement.[14] Further, as was the case in *Rogers I*, a finding of contempt is not a prerequisite to an award of attorney's fees.[15] Thus, we affirm the attorney-fee award as well.

Affirmed.

GLADWIN and HENRY, JJ., agree.

---

10. *See, e.g., Camp v. McNair*, 93 Ark.App. 190, 217 S.W.3d 155 (2005).

11. *McKay v. McKay*, 340 Ark. 171, 8 S.W.3d 525 (2000).

12. *See Artman v. Hoy*, 370 Ark. 131, 257 S.W.3d 864 (2007).

13. *See* Ark.Code Ann. § 16–22–308 (Repl. 1999).

14. *See also Martin v. Scharbor*, 95 Ark.App. 52, 233 S.W.3d 689 (2006) (affirming an attorney-fee award in a case to enforce a divorce decree).

